Thornbrough, Comm'r. of Labor *v.* Schlenker.

5-1503                                      311 S. W. 2d 753

Opinion delivered April 7, 1958.

*Luke Arnett,* for appellant.

*Tom Gentry,* for appellee.

Ed. F. McFaddin, Associate Justice.   This appeal presents the question, whether certain employees are entitled to unemployment benefits during the week when the plant was shut down. The employees (appellees[1] here) claimed that during such week they were "unemployed through no fault of their own" (being the words in § 81-1101 Ark. Stats. as amended by Act 155 of 1949). The appellant claims that the appellees were "voluntarily unemployed" and thus not entitled to the benefits of the Arkansas Employment Security Act (see § 81-1101 Ark. Stats. and amendments).

The appellees were employees of International Shoe Company (hereinafter called "Shoe Company") at its plant in Malvern, Arkansas, and were members of Local Union No. 2665 of the United Textile Workers of America (hereinafter called "Union"), which was the bargaining agent for the appellees. The Union and the Shoe Company had a contract which provided that em-

---

[1] There are twenty-four appellees, being, W. C. Schlenker, Aubrey Stancy, Lindal Baker, HuVaughn Fitzhugh, George Taylor, Bonnie Hiatt, Catherine Greene, Homer Myers, Travis Reeves, Arvil Hudson, Louise Bost, Rufus Pearson, Herman Parker, Jewell Burris, William Abbott, Marshall Davis, Maydean Gregory, Willis Diffee, Carl Hanley, Mildred Hanley, Cecil Richardson, Agee McDonald, Hazel Hardage and Lola Davenport.

ployees who had worked a specified minimum time would be entitled to paid vacations. There was no provision in the contract whereby the Shoe Company had the right to close its entire plant at any time it desired and require all employees to take their vacations at that time. On June 24, 1954 the Shoe Company posted a notice to its employees:

"The plant will close July 2, 11 P. M. for vacation week; will begin regular operations Monday, July 12. Those eligible for vacation at that time will be given vacation checks on July 2."

Seventeen of the appellees had not been employed by the Shoe Company long enough to qualify for vacation pay; and the other seven of the appellees had already taken their vacations with the consent of the Shoe Company; so that these twenty-four appellees, through no fault of their own, were out of employment during the entire work week ending July 10, 1954. They duly filed for unemployment compensation benefits under the Arkansas Employment Security Act. There is no claim that the appellees failed to comply with the registration and availability requirements of the Act: the sole issue is whether the plant wide vacation shutdown by the Company rendered the appellees entitled to benefits as being unemployed. The Arkansas Employment Security Act provides in § 81-1103(m), as amended by Act 155 of 1949, "An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no wages are payable to him, or with respect to any week of less than full time work if the wages payable to him with respect to such week are less than his weekly benefit amount."

The appellees performed no services and received no wages in the week ending July 10, 1954; but appellant claims that the contract between the Union and the Shoe Company provided for vacation periods, and that because of such provisions in the contract the appellees were *voluntarily* unemployed. Thus the sole issue is whether the contract between the Union and the Shoe

Company placed the appellees in the status of being *voluntarily* unemployed. The claims of the appellees went through the regular administrative procedure,[2] and the Board of Review, by a divided vote, allowed the claims of the appellees for the said week in question. The Circuit Court affirmed the awards made by the Board of Review; and the Commissioner of Labor prosecutes this appeal in order to obtain a definitive ruling on the point at issue.

There are a number of cases from other jurisdictions on the identical question here posed. To review all such cases would unduly prolong this opinion. Instead, we quote from the Annotation in 30 A. L. R. 2d 366, entitled, ''Right to unemployment compensation as affected by vacation or holiday or payment in lieu thereof.''[3] This Annotation states:

''As a rule, whenever a vacation takes the form of a general plant shutdown for the vacation period, some employees are ineligible for vacation pay because of failure to meet the minimum service requirements of the contract. Whether such employees should be regarded as on vacation or unemployed within the meaning of the unemployment insurance laws, presents a perplexing problem which has led to varying decisions in the courts . . . . In the following cases, unpaid workers involved in a general shutdown of their place of employment for the purpose of giving paid vacations to those eligible have been held not entitled to benefits for the vacation weeks.''

The cases referred to are from Massachusetts, Minnesota, New York, Pennsylvania, and Washington. The Annotation continues:

''Other courts have held that an employee who fails to qualify for a paid vacation under the terms of the applicable contract should be regarded not as on vaca-

---

[2] In *Little Rock Furn. Mfg. Co.* v. *Comm. of Labor*, 227 Ark. 288, 298 S. W. 2d 56, we stated the various steps of the administrative procedure.

[3] In the supplementary volumes, later cases are listed as involving the same point.

tion, but as unemployed, and therefore entitled to benefits for the period of a vacation shutdown."

The cases referred to are from Connecticut, Indiana, Michigan, and Pennsylvania.

It is impossible to reconcile all of the various cases. A reasonable distinction between the two lines of decisions might be this: if, by the contract between the Union (the agent of the workers) and the management of the plant, there was reserved by the management of the plant the right to fix, at its own option, a plant wide vacation period, then the employees had agreed to such vacation and had been *"voluntarily* unemployed"; and, therefore, not entitled to employment benefits. But if the contract had no provision whereby the management reserved the right to fix, at its own option, a plant wide vacation shutdown, then the employees had not agreed to such vacation period and were *"involuntarily* unemployed" during such shutdown period; and, being *involuntarily* unemployed, they were entitled to unemployment compensation.

In the contract between the Union and the Shoe Company, in the case at bar, there were some provisions concerning vacations, such as: (a) "All vacations shall be taken between June 1st and December 31st of each year and must be arranged for in advance with the foreman . . ."; (b) "Vacations will be granted only at times when the Company can spare the services of the employees and still obtain production requirements . . ."; and, of course, there was the provision (c) that ". . . the management of the Company's plants and the direction of the working forces . . . is vested exclusively in the Company . . ." But the provisions in the contract in the case at bar did not provide for a plant wide vacation shutdown period, as was the situation in the contracts in such cases as *Adams* v. *Review Board* (Ind.), 143 N. E. 2d 564, and *I. M. Dach Underwear Co.* v. *Michigan Employment Sec. Commission,* 347 Mich. 465, 80 N. W. 2d 193. We reiterate that in the case at bar there was no provision in the contract looking to-

ward a plant wide vacation shutdown period at the option of the management.

We hold that under the contract between the Union and the Shoe Company, here involved, these twenty-four appellees are entitled to unemployment compensation benefits for the week ending July 10, 1954. This is true because there was no provision in the contract whereby the Shoe Company had the right to close down its entire plant for a vacation period at any time it elected and thereby force the appellees to take vacations at such time, even though some of them had not worked long enough to be entitled to vacations, and others had taken their vacations with consent of the management.

Affirmed.