HARMON *v.* LANEY.

5-3538                                    393 S. W. 2d 273

Opinion Delivered May 31, 1965.

[Rehearing denied September 20, 1965.]

*McMath, Leatherman, Woods & Youngdahl,* for appellant.

*Luke Arnett* and *Arthur G. Frankel, Jr.,* for appellee.

JIM JOHNSON, Associate Justice. This is an unemployment compensation case.

The appellants are employees of the International Shoe Company. In the summer of 1963, the shoe company ceased operation of their factories for a two week plantwide vacation shutdown. Appellants had not worked for the company long enough to be entitled to a vacation. During this two week period, appellants performed no

604

work and received no vacation pay or other remuneration from their employer. Appellants initiated or continued claims for benefits under the Arkansas Employment Security Act. From the record it appears that appellants met every qualification of the law required for entitlement of benefits. Ark. Stat. Ann. § § 81-1103 and 81-1105 (Supp. 1963). There was no indication that these appellants voluntarily and without good cause left their work so as to be disqualified under the provisions of the Act. Ark. Stat. Ann. § 81-1106 (Supp. 1963). Upon hearing, benefits were denied by the Employment Security Division, Appeal Tribunal, Board of Review and the Circuit Court. From such denial comes this appeal.

For reversal appellants contend that they are entitled to benefits based upon the established law and urge a reconsideration of the pirnciples enunciated in a prior decision.

The sole basis given for the denial of these claims was the case of *Thornbrough* v. *Schlenker,* 228 Ark. 1012, 311 S. W. 2d 753 (1958). In that case this court after reviewing cases from other jurisdictions and the annotation in 30 A.L.R. 2d 366, said:

"It is impossible to reconcile all of the various cases. A *reasonable distinction* between the two lines of decisions *might be:* if, by the contract between the Union (the agent of the workers) and the management of the plant, *there was reserved by the management of the plant the right to fix, at its own option, a plant wide vacation period,* then the employees had agreed to such vacation and been *'voluntarily* unemployed'; and, therefore, not entitled to employment benefits. But if the contract *had no provision whereby the management reserved the right to fix, at its own option, a plant wide vacation shutdown,* then the employees had not agreed to such vacation period and were *'involuntarily* unemployed' during such shutdown period; and, being *involuntarily* unemployed, they were entitled to unemployment compensation."

[Emphasis ours.]

This opinon concludes with the following language:

"We hold that under the contract between the Union and the Shoe Company, here involved, these twenty-four appellees are entitled to unemployment compensation benefits for the week ending July 10, 1954. This is true because there was *no provision in the contract whereby the Shoe Company had the right to close down its entire plant for a vacation period at any time it elected* and thereby force the appellees to take vacations at such time, even though some of them had not worked long enough to be entitled to vacations, and others had taken their vacations with consent of the management."

[Emphasis ours.]

The same annotation relied upon by this court for the "distinction" found to exist in the *Schlenker* case, *supra,* had this to say:

"On this question the courts have been divided some by a process of *legalistic hairsplitting* concluding that such workers are voluntarily unemployed and therefore not eligible for unemployment compensation, and *others taking the more realistic view* that such employees are out of work through no fault of their own and therefore are entitled to benefits."

[Emphasis ours.]

Appellants concede the historic fact that under our free enterprise system the right to close a manufacturing plant is a basic prerogative of management. *N. L. R. B.* v. *New Madrid Mfg. Co.,* 215 F. 2d 908 (8th Cir.).

A leading authority on labor relations, Elkouri, How Arbitration Works (Rev. Ed. 1960), has this to say on pages 338-339: "One of the prerogatives of management [is] to schedule vacations at such time as best meets the needs of the business."

With these fundamental prerogatives of management thus established, it is our view that a contractual expression of those rights as is implicit in the dictum of the *Schlenker* opinion is manifestly superfluous. To give weight as a basis for a "distinction" to a contract clause which purports to grant to management that which

management already possesses is to create an artificial criterion.

From the record in the case at bar it becomes obvious that if appellants and others similarly situated are to confidently meet the test implicit in *Schlenker* they must insist upon a labor contract which denies the employer the right to close. Such a contract of course would be against public policy and contrary to the economic system of this country.

On the whole case appellees urge, and *Schlenker* seems to hold, that entitlement to compensation during vacation shutdowns should be governed exclusively by the particular wording of the employment contract. This is in direct contravention to § 81-1118 of the Employment Security Act: "Any agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this Act shall be void." See *Sallee Bros.* v. *Thompson,* 208 Ark. 727, 187 S. W. 2d 956. Upon reconsideration of *Schlenker* we find the opinion and its resultant ramifications to be untenable.

The first paragraph of the Arkansas Employment Security Act is, in part, as follows:

"§ 81-1101. As a guide to the interpretation and application of this act, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten the burden which may fall with crushing force upon the unemployed worker and his family."

This law is remedial in nature and must be liberally construed in order to accomplish its beneficent purposes. *Prince Poultry Co.* v. *Stevens,* 235 Ark. 1034. 363 S. W. 2d 929; *Holland* v. *Malvern Sand & Gravel Co.,* 237 Ark. 635, 374 S. W. 2d 822.

"It seems to us that a worker who is ready, willing and able to work but is left without work and pay because

his employer's plant has temporarily shut down comes fairly within the broad coverage of the Unemployment Compensation Law. The shutdown may be for a relatively short period or it may be for a relatively long period. In either event the worker does not receive his weekly pay check upon which he and his family are generally dependent for their food and shelter. In good times as well as bad there are unemployed persons who seek work and finally obtain it at plants which they understand may temporarily shut down thereafter. These persons are truly without employment during the payless shutdowns, even though they will resume when the plants reopen." *Teichler* v. *Curtiss-Wright Corp.*, 133 A. 2d 320 (N.J., 1957).

The Employment Security Division has long been recognized as a primary supplier of temporary labor. Contemplation of permanent employment is not and has never been a prerequisite for qualification ·for entitlement for benefits, or for job placement, under the Arkansas Employment Security Act. "Playing with phrases like 'vacation without pay' or 'leave of absence' stems from want of better terms to avoid the words 'laid off.' This is to say, the act should be liberally construed so as to insure a subsistence bridge for those who have been separated from employment under conditions whereby they are ready, willing and able to work, but cannot conscientiously secure it during the period of separation." *Dahman* v. *Commercial Shearing Co.*, 170 N. E. 2d 302 (Ohio, 1960).

Strict constructions which result in defeat of the intended purposes of the Act will not be sanctioned by this court. Accordingly, this case is reversed and the cause remanded for further proceedings consistent with this opinion.

McFaddin, Ward and Robinson, JJ., dissent.

Ed. F. McFaddin, Associate Justice, (dissenting).

Although there are numerous reasons for this dissent, I will urge only two points: (1) the present holding creates judicial uncertainty; and (2) the present holding is wrong.

## I.

*Judicial Uncertainty.* This case is an attack on the Opinion of this Court in *Thornbrough* v. *Schlenker,* 228 Ark. 1012, 311 S. W. 2d 753. That Opinion was delivered on April 7, 1958 by a unanimous Court; and now, after seven years, the present Majority is saying: ".. . we find the Opinion and its resultant ramifications to be untenable." Bear in mind that in 1958 this Court announced, in a unanimous Opinion, a yardstick whereby all concerned — the Commissioner of Labor, the labor unions, the employers, and the employees — would know how to proceed. We said:

"It is impossible to reconcile all of the various cases, A reasonable distinction between the two lines of decisions might be this: if, by the contract between the Union (the agent of the workers) and the management of the plant, there was reserved by the management of the plant the right to fix, at its own option, a plant wide vacation period, then the employees had agreed to such vacation and had been *'voluntarily* unemployed'; and, therefore, not entitled to employment benefits. But if the contract had no provision whereby the management reserved the right to fix, at its own option, a plant wide vacation shutdown, then the employees had not agreed to such vacation period and were *'involuntarily* unemployed' during such shutdown period; and being *involuntarily* unemployed, they were entitled to unemployment compensation."

The test of voluntary unemployment as opposed to involuntary unemployment during the period of a plant vacation was simply and succinctly stated. If what we said in *Thornbrough* v. *Schlenker* was in error, the Ar-

kansas Legislature could have changed it by legislative enactment. Since 1958 there have been four regular sessions of the Arkansas Legislature — 1959, 1961, 1963, and 1965 — and there has been no legislative enactment to overcome the Opinion. If there was to be a change, it should have been by legislative enactment rather than by judicial decision, because a legislative enactment is prospective, whereas a judicial decision is retroactive. In *Carter Oil Co.* v. *Weil,* 209 Ark. 653, 192 S. W. 2d 215, this distinction was stated.

If the Majority of the Court desires to re-examine the correctness of our language in *Thornbrough* v. *Schlenker,* the Court could now issue a caveat that in all transactions arising after this date we will be free to re-examine the correctness of our language in *Thornbrough* v. *Schlenker.* This caveat method has been used in several cases since the usury cases[1] and has been a notice to the public. It is fair. But the present holding, in changing the rule announced in *Thornbrough* v. *Schlenker,* is retroactive and creates uncertainty as to the stability of judicial holdings. If the Arkansas Supreme Court is to change its holdings whenever the same question is again presented, our holdings will have become as uncertain as those of some other courts which have a tendency to re-examine every question whenever there is a change of personnel on the court. The Bench and Bar, and the public generally, have contracted in reliance on the holding in *Thornbrough* v. *Schlenker.* How will anyone know that the rule will not be changed again when the question is next presented to this Court? The present holding creates judicial uncertainty.

## II.

*The Present Holding Is Wrong.* The basic question is: "When is a worker involuntarily unemployed?" It is only when he is involuntarily unemployed that he can qualify for unemployment compensation benefits. Involuntary unemployment means unemployment without his

---

[1] See *Hare* v. *Gen. Contr. Corp.,* 220 Ark. 601, 249 S. W. 2d 973; *Crisco* v. *Murdock,* 222 Ark. 127, 258 S. W. 2d 551; and see also *Clubb* v. *State,* 230 Ark. 688, 326 S. W. 2d 816.

own volition. When he works under a contract that provides that the plant may be shut down for a two weeks vacation — whether with or without pay — he cannot be heard to say that during that two weeks period he was *involuntarily unemployed,* since he had agreed to such vacation period.

Under the National Labor Relations Act, when a union becomes the bargaining agent for the employees at a plant it is the bargaining agent for *all employees,* not just those who belong to the union. In *Thornbrough* v. *Schlenker* there was no provision in the contract for a plant wide vacation period; but in the contract here involved there is a definite provision for a plant wide vacation[2] period. The contract is dated November 27, 1962 (several years after the Schlenker Opinion) and is a document of some thirty typewritten pages. Section 13 of the contract concerns the matter of vacation,[2] and provides:

"The COMPANY will close the plant the calendar week which includes the first Monday in June and during the following calendar week for the purpose of providing vacations to those employees who are entitled to vacation benefits except that in cases where process requirements make this impracticable (such as a tannery) the closing will start on the first working day of the week which includes the first Monday in June and will progress thereafter through the plant as rapidly as the process permits and work will resume two weeks after the last day worked before vacation started . . . "Upon request of either the employees or the COMPANY not later than April 15th the matter of changing the plant closing for the purpose of granting vacations will be discussed. If the parties are unable to agree as to any proposed changes, the plan as written herein shall remain unchanged."

Thus we have a contract which provides exactly when the plant should be shut down for summer vacation. How

---

[2] The contract stated that if any person had worked for as long as one year he would get one week vacation with pay; if he had worked not less than five years he would get two weeks vacation with pay; and if he had worked longer he would get three weeks vacation with pay.

can anyone say that he was "involuntarily unemployed" during such vacation period when he was working under a contract that specified the dates for the summer vacation? These men were certainly "voluntarily unemployed" during the annual vacation period covered by this contract; and no amount of judicial legerdemain can change that fact. The contract here involved was negotiated in 1962. If the union had wanted to provide that any man who did not get vacation pay would be considered involuntarily unemployed the contract had only to so state in one sentence; and yet there is no such provision in the contract here involved.

Since our decision in *Thornbrough* v. *Schlenker* the question here presented has been before the Supreme Court of Mississippi in the case of *Mississippi State Employment Sec. Com'n.* v. *Jackson* (decided January 11, 1960), 116 So. 2d 830. The language of the Supreme Court of Mississippi is so clear that I quote it and adopt it as my own:

"The question for our decision involves the right to unemployment compensation for a period when the plant was shut down for vacations in accordance with the union contract.

"In order to be entitled to unemployment compensation benefits under the statutes, an employee must be involuntarily unemployed and must be available for work, and it follows that if the employees are voluntarily unemployed and were not available for work within the meaning of the statute, the Commission was justified in denying unemployment benefits.

"The courts of Mississippi have not passed on this question. The case of Moen v. Director of Division of Unemployment Security, 324 Mass. 246, 85 N. E. 2d 779, 8 A.L.R. 2d 429, is directly in point. In that case the union contract was silent as to the status of those employees not entitled to vacation with pay while the plant was shut down for vacations of those employees entitled to paid vacations, and the union contract permitted the company to designate any period of temporary shutdown as the vacation period. The Court held that those em-

ployees who were not entitled to vacation with pay were on vacation without pay. The basis of the decision denying benefits to those employees who were not entitled to vacations with pay was that such employees were voluntarily unemployed. Other similar holdings are Mattey v. Unemployment Compensation Board of Review, 164 Pa. Super. 36, 63 A. 2d 429; In re Buffelen Lumber & Mfg. Co., 32 Wash. 2d 205, 201 P. 2d 194; Jackson v. Minneapolis-Honeywell Regulator Co., 324 Minn. 52, 47 N. W. 2d 449; In re Claims of Rakowski, 276 App. Div. 625, 97 N.Y.S. 2d 309; Naylor v. Shuron Optical Company, 281 App. Div. 721, 117 N.Y.S. 2d 775; In re Graziadei's Claim, 286 App. Div. 911, 142 N.Y.S. 2d 380; General Electric Co. v. Unemployment Compensation Board of Review, 177 Pa. Super. 49, 110 A. 2d 258; Philco Corporation v. Unemployment Compensation Board of Review, 175 Pa. Super. 402, 105 A. 2d 176; Glover v. Simmons Co., 17 N.J. 313, 111 A. 2d 404.''

When one considers that the Mississippi case, and all the other cases which the Mississippi opinion cites have the same rule that was announced by us in *Thornbrough v. Schlenker,* it is hard to see how the Majority of the Arkansas Court can now say that such rule is ''untenable.''

The Majority Opinion quotes from Ark. Stat. Ann. § 81-1118 (Repl. 1960) : ''Any agreement by an individual to waive, release, or commute his rights to benefits or other rights under this Act shall be void.'' This quotation leaves the impression that by the employment contract in this case the workers are waiving or releasing their rights to draw unemployment compensation. I think such conclusion misses the entire point. Certainly a worker cannot ''waive'' the benefits of the Unemployment Compensation Act, but when he becomes *employed* he is not *unemployed;* and when a worker is *employed* he is not entitled to the benefits of the Unemployment Compensation Act. These appellants in this case are *employed* under a contract which gives them paid holiday as therein specified and which provides that when the plant is shut down they are *voluntarily unemployed.* While they are under such contract they are certainly not ''*involun-*

*tarily unemployed.''* That is the test for their right to receive unemployment benefits.

For the reasons herein stated, I dissent.

PAUL WARD, Associate Justice, (dissenting). My purpose in dissenting is to attempt to bring some sort of order out of obvious confusion and to formulate a simple, workable rule to apply when the issue here involved arises. I fully realize this attempt may be fruitless.

I am not in complete agreement with the majority opinion or with the *Schlenker* case. The majority opinion in effect holds that an employee cannot, under any kind of contract or arrangement, agree to take a vacation without pay (and be unable to draw E. S. D. benefits) for a short period of time even though (under the contract) it would be to his financial advantage to do so. Such a conclusion, in my opinion, is illogical, unsound, unreasonable, and inequitable. I do not agree entirely with the *Schlenker* case, because, in my opinion, it does not sufficiently protect the employee from being the victim of an inequitable contract. I readily agree that it would be a violation of Ark. Stat. Ann. § 81-1118 (a) (Supp. 1963) to allow an employee to agree (for example) to a four month vacation without pay, and then for this Court to hold he could not draw E. S. D. benefits.

The rule, in a case of this nature, which embodies my views and which easily could be applied to any factual situation, is this: Let the Employment Security Division (through its administrative agencies) decide (subject to approval by the courts) whether the employee (in any labor-management contract) has bartered away any of his unemployment benefit rights. If it be determined that he has done so, then he is involuntarily unemployed — otherwise, he is voluntarily unemployed.