NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2667-15T4

JAMIELYN GERARD,

 Appellant,

v.

BOARD OF REVIEW and
SURFACE SOURCE
INTERNATIONAL, INC.,

 Respondents.
——————————————————————————

 Argued August 8, 2017 – Decided September 12, 2017

 Before Judges Hoffman and Currier.

 On appeal from the Board of Review, Department
 of Labor, Docket No. 021,548.

 Michael DiChiara argued the cause for
 appellant (Krakower DiChiara, LLC, attorneys;
 Mr. DiChiara, on the briefs).

 Peter H. Jenkins, Deputy Attorney General,
 argued the cause for respondent Board of
 Review (Christopher S. Porrino, Attorney
 General, attorney; Melissa Dutton Schaffer,
 Assistant Attorney General, of counsel; Mr.
 Jenkins, on the brief).

 Respondent Surface International, Inc., has
 not filed a brief.

PER CURIAM
 Claimant Jamielyn Gerard appeals from the February 8, 2016

final agency decision of the Board of Review (Board), rejecting

her claim for unemployment benefits. Claimant worked as an

administrative assistant for Surface Source International, Inc.

(SSI) from February 2008 until she sent an email resigning in

April 2014. Claimant argues she had good cause to quit her job

because her coworker continuously harassed her for over three

years, and SSI failed to take effective steps to stop the

harassment. We agree and reverse.

 I.

 Claimant filed for unemployment benefits on April 20, 2014.

On July 13, 2014, a Deputy Director (Deputy) of the Division of

Unemployment and Disability Insurance Services determined claimant

disqualified for benefits on the ground she left work voluntarily

without good cause attributable to the work.

 Claimant appealed the Deputy's determination, and the Appeal

Tribunal (Tribunal) held a hearing on July 10, 2014. Claimant

testified that about a year into her employment, she found her

"manager hooking up with the warehouse manager." After she

confronted her manager about it, the warehouse manager "started

having this vendetta against" her.

 He would call me names; everything from, "Mama
 Gorda, you bitch, you . . . [.]" Many verbal
 names; anything he could say to hurt me. He
 2 A-2667-15T4
 was commenting on the type of clothes I was
 wearing, the type of underwear I had on. He
 . . . stole personal property out of my desk,
 he vandalized my desk. He physically harassed
 me[.] [H]e touched me from behind, he had
 grabbed me. We . . . got into a physical
 altercation where he took me and slammed me
 into his desk.

 Claimant further stated, "I was not physically injured, but

yes . . . I did hurt." She did not call the police because her

bosses "assured" her "that something like this would never happen

again." She added that she did not file a police report "out of

fear." Claimant said this happened "about three years ago." When

she previously reported the warehouse manager touching her

buttocks, her manager replied, "[T]hat's just how he is."

 Claimant explained, "I went to . . . my boss and my manager,

I explained what had happened, I was very upset, I was crying."

Her bosses said their lawyers recommended installing "security

cameras," but they never followed this advice. One of her bosses

told her the warehouse manager "was warned, and if he did anything

to me again[,] he would be fired."

 According to claimant, the warehouse manager continued to

call her names, especially "Mama Gorda." He would swear at her,

"just anything that hurts." She further testified, "And he has

done so much things to me, and I have continuously met with them

and spoke with them and told them all this, and . . . they never

did anything to help the situation." SSI's owner told her "that
 3 A-2667-15T4
the devil he knows is better than the devil he doesn't know . . .

even though he was harassing me and tormenting me."

 Claimant further explained,

 . . . I was so stressed from all of this that
 my health was deteriorating. I saw seven
 doctors in the past year, and I've spent like
 hundreds of dollars in co-pays because of all
 this stress, and my boss was accusing me of
 forging doctor's notes. And with all this
 happening I just needed to . . . take my health
 seriously[.] I was tired of being harassed,
 and so I resigned.

Claimant's symptoms included stomach problems, chest pain, and

trouble sleeping; she saw various doctors, including a

pulmonologist, a cardiologist, and a gastroenterologist. "[T]hey

found nothing, and . . . all said that it was the stress from

work."

 By April 2014, claimant "was tired of being harassed," so she

sent SSI's owner an email resigning, effective immediately. She

did not quit earlier because she "really" liked the position;

"[i]t's just every time [the warehouse manager] would do something

to me[,] and I would have a meeting with them, . . . they would

assure me that things were gonna get better, and they would for a

couple weeks, and then it would just start back up again." She

also explained that "it's hard to find work these days."

 Claimant's manager was the employee representative during the

hearing. She agreed claimant had reported the warehouse manager

 4 A-2667-15T4
physically and verbally harassed her. She said that "we would go

to him, and he'd say he didn't do anything;" however, after the

warehouse manager slammed claimant into his desk, "we had him sign

a written warning for violence in the workplace." Additionally,

"we offered the hidden cameras," but claimant "insisted that that

was not necessary." She also testified that she verbally reviewed

SSI's harassment policy with her employees, but she did not post

any of the information at the facility nor did SSI have an employee

handbook.

 SSI's owner testified that he met with claimant after the

warehouse manager slammed her into his desk, and he issued the

warehouse manager a written warning that SSI would fire him "if

there is any violence in the workplace" again. The owner also

said claimant told him that she did not want him to install any

cameras because "she felt uncomfortable with cameras." The owner

claimed he did not know of any other incidents involving claimant

and the warehouse manager. "[T]he only issues that were ever

brought up to my attention were that [claimant] does not . . . get

along with [the warehouse manager]. It was never brought to my

attention that somebody saw something. It was never brought to

my attention that there was further touching of any kind." He

said he offered to pay for claimant's internet at home, so she

could work there, but claimed she declined the offer.

 5 A-2667-15T4
 The Tribunal accepted the testimony of claimant's manager and

SSI's owner, and consequently found that "claimant never presented

any issues or concerns to management after" they issued the

warehouse manager a written warning about workplace violence. The

Tribunal therefore concluded that claimant was "disqualified for

benefits . . . , under [N.J.S.A.] 43:21-5(a), as she left work

voluntarily without good cause attributable to such work."

Claimant appealed and the Board remanded because "a complete and

audible record of the hearing [was] not available for review."

 The Tribunal held another hearing, and received testimony

generally consistent with the first hearing; however, one new

detail emerged. Claimant testified she had a meeting with her

manager and SSI's owner in January 2014. At the meeting, she told

them that the warehouse "always" made her "feel unsafe," and "it

was getting worse." The owner then asked her "if . . . something

would cause this behavior," apparently suggesting claimant may be

doing something to elicit the warehouse manager's conduct. The

owner told claimant she worked in "a small office and . . . needed

to be able to deal with it." When claimant tried to express that

she should not "have to work in an uncomfortable environment," the

owner told her "to get over it and accept it." After this meeting,

claimant said the warehouse manager continued to harass claimant

"physically, mentally, sexually, and verbally." She recalled,

 6 A-2667-15T4
 One day he'd be making cat calls and whistling
 at me, continuing to comment on how I looked,
 making sexually inappropriate comments, the
 next day calling me horrible names and
 verbally harassing me. . . . He stole things
 out of my desk.

Claimant told her manager, but "she did nothing."

 At some point thereafter, the warehouse manager "poured

[something on the] side of [her] desk so that it would smell

. . . . [H]e got caught . . . [and] had to pay a cleaning service

to remove the smell and was fired." However, soon thereafter, SSI

inexplicably rehired him, and told claimant "he won't do anything

to you again." She told them that she "felt unsafe around him,"

but "they didn't really ask [her] opinion." Claimant testified

the warehouse manager resumed harassing her until she resigned.

At this hearing, claimant also explained that "Mama Gorda" meant

"fat mama."

 SSI's owner testified that he scheduled the January 2014

meeting because other employees were asking whether "everything

was okay" with claimant. The owner said, "[W]e sat with [claimant]

to make sure that . . . she was happy[, and] we did ask, and she

said she was happy." In the next sentence, the owner qualified

this statement by noting that claimant did express that she had a

problem with the warehouse manager "whistling . . . in the

warehouse." The owner said he then spoke with the warehouse

manager, who admitted whistling, but said it was not directed at
 7 A-2667-15T4
claimant. The owner said he told the warehouse manager to stop

whistling. At the close of the January 2014 meeting, the owner

said he asked claimant "to adjust her attitude and become more of

a team player[,] and we're a small operation[,] and everybody has

to get along." She told him that "she'll never get along with"

the warehouse manager. He said, "If anything else is to happen,

put it in writing and let me know."

 Following this second hearing, the Tribunal found that it

could not "dispute the claimant's allegations regarding her

problems she experienced with her co-worker during her employment

period," but also noted that SSI's owner "testified . . . claimant

never presented any problems after a meeting to discuss her

attitude [in January 2014]." The Tribunal consequently found that

"there is insufficient evidence to support . . . claimant's

testimony [that SSI] failed to bring some resolution to the

matter[;] therefore, [claimant] failed to meet the burden of proof

requirement for good cause."

 Claimant again appealed, and the Board remanded the claim for

a third hearing, this time for the Tribunal "to consider medical

evidence submitted by . . . claimant and to make a decision as to

whether . . . claimant's leaving was with good cause attributable

to work."

 8 A-2667-15T4
 The Tribunal's third hearing lasted two days, March 18, and

July 17, 2015. Claimant testified she had "horrible chest pains

and . . . headaches" while she worked for SSI; she also had

"stomach pains." She saw "a cardiologist, pulmonologist,

gastroenterologist, and general practitioners" for these symptoms.

The doctors could not find a medical explanation of her pain; her

general practitioner told her "the only potential cause was work

related stress." A social worker diagnosed her with post-

traumatic-stress disorder. The social worker also "found [her]

to be depressed . . . by [her] working conditions." After she

resigned, claimant's pain "cleared up," and she no longer had "any

health problems."

 Claimant explained that she did not write her complaints down

because she would directly report to her bosses in their offices.

When she told them the warehouse manager "would do scary things

in front of" her, her bosses said they "would take care of it,"

but they never did.

 Claimant's social worker also testified. The social worker

said that claimant "was depressed and overwhelmed by her working

conditions." The social worker "found her committed to her job

despite the abusive behavior by her co-worker, and not being

protected by either her manager or her employer." She said

claimant could not "tolerate the abuse" anymore, so she resigned.

 9 A-2667-15T4
Her bosses' failure to stop the harassment left claimant "feeling

helpless and unprotected." She concluded that claimant did not

have "any choice but to exit the situation." She testified that

"women in these situations take a long time to get the courage to

act and often appear sudden when, in fact, it was a building

situation."

 The Tribunal "acknowledged . . . claimant's former co-worker

exhibited inappropriate behavior towards her during her employment

period," but rejected "claimant's accusation that management

failed to provide some resolution regarding her concerns as

reasonable." Instead, the Tribunal found it reasonable that

"management instructed . . . claimant to submit any future concerns

or problems with her former co-worker in writing on [1/16/14].1

The claimant never presented any issues regarding the employee."

The Tribunal therefore concluded that "[t]his was a personal reason

and was not attributable to the work."

 Claimant again appealed, and on February 8, 2016, the Board

affirmed the Tribunal, noting its agreement "with the decision,"

after "a full and impartial hearing and a complete opportunity to

offer any and all evidence." Claimant now appeals to this court

from the decision of the Board.

1
 The opinion incorrectly set forth the date 1/16/15.
 10 A-2667-15T4
 II.

 The Unemployment Compensation Act (Act), N.J.S.A. 43:21-1 to

-24.30, provides that an individual shall be disqualified for

benefits if "the individual has left work voluntarily without good

cause attributable to such work." N.J.S.A. 43:21-5(a). "'[G]ood

cause attributable to such work' means a reason related directly

to the individual's employment, which was so compelling as to give

the individual no choice but to leave the employment." N.J.A.C.

12:17-9.1(b). If a claimant resigned "for 'good cause attributable

to [the] work,' [s]he is eligible for benefits, but if [s]he left

for personal reasons, however compelling, [s]he is disqualified

under the statute." Utley v. Bd. of Review, 194 N.J. 534, 544

(2008). "The burden of proof is on the claimant to establish good

cause attributable to such work for leaving." N.J.A.C. 12:17-

9.1(c).

 Fundamental principles of law guide our decisions governing

unemployment compensation. The Legislature designed the Act

primarily to lessen the impact of unemployment that befalls workers

without their fault. Brady v. Bd. of Review, 152 N.J. 197, 212-

13 (1997). "The public policy behind the Act is to afford

protection against the hazards of economic insecurity due to

involuntary unemployment." Yardville Supply Co. v. Bd. of Review,

114 N.J. 371, 374 (1989) (alteration in original). Unemployment

 11 A-2667-15T4
compensation law is "remedial in nature . . . [and] must be

liberally construed in light of [its] beneficent purposes."

Teichler v. Curtiss-Wright Corp., 24 N.J. 585, 592 (1957).

 We exercise limited review of administrative agency

decisions. Brady, supra, 152 N.J. at 210. We are bound to affirm

the agency's determination if reasonably based on proofs. Ibid.

"'[T]he test is not whether an appellate court would come to the

same conclusion if the original determination was its to make, but

rather whether the factfinder could reasonably so conclude upon

the proofs.'" Ibid. (quoting Charatan v. Bd. of Review, 200 N.J.

Super. 74, 79 (App. Div. 1985)). However, we may intervene if the

administrative agency's action was arbitrary, capricious, or

unreasonable, or it was "'clearly inconsistent with its statutory

mission or with other State policy.'" Ibid. (quoting George Harms

Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994)).

 "An individual shall not be disqualified for benefits for

voluntarily leaving work if he or she can establish that working

conditions are so unsafe, unhealthful, or dangerous as to

constitute good cause attributable to such work." N.J.A.C. 12:17-

9.4.

 In essence, the Tribunal disqualified claimant not on the

basis of whether the harassing conduct occurred, but rather on the

basis that she did not first make a written complaint before

 12 A-2667-15T4
resigning, notwithstanding her many verbal complaints, and did not

specifically identify her reason for resigning in her last email

to SSI.

 Initially, we conclude that the Tribunal's finding ignores

the uncontroverted testimony of claimant regarding the long-term

harassment she endured. Further, claimant complained to SSI, and

received assurance that SSI would remedy the situation; however,

SSI failed to take effective remedial steps, and the harassment

continued. Instead of properly addressing the problem, SSI's

owner made a request of claimant, the victim of the harassment,

"to adjust her attitude," and to register future complaints in

writing.

 Claimant was not required to make continuous complaints. In

Condo v. Bd. of Review, supra, 158 N.J. Super. 172, 173 (App. Div.

1978), the claimant complained to his manager about his co-worker's

threat of physical violence, and despite a warning, the co-worker

continued the threats. The claimant did not bring additional

complaints, which the Tribunal and Board found as a basis to deny

benefits. Id. at 173, 175. We reversed, holding that the failure

to continue to complain did not provide a valid basis to disqualify

the claimant. Id. at 175-76.

 In Brady, the Court interpreted "good cause" for leaving

employment as "cause sufficient to justify an employee's

 13 A-2667-15T4
voluntarily leaving the ranks of the employed and joining the

ranks of the unemployed." Brady, supra, 152 N.J. at 214 (quoting

Domenico v. Bd. of Review, 192 N.J. Super. 284, 287 (App. Div.

1983)). This court held in Domenico that good cause must be

compelled by "real, substantial and reasonable circumstances not

imaginary, trifling and whimsical ones." Domenico, supra, 192

N.J. Super. at 288. Whether an employee has good cause for

terminating their employment is viewed through the lens of

"ordinary common sense and prudence." Zielenski v. Bd. of Review,

85 N.J. Super. 46, 52 (App. Div. 1964).

 After considering the testimony from the hearings, we

conclude that claimant resigned from her employment with SSI for

good cause attributable to the work. Claimant legitimately

believed that the work environment was harmful to her health.

Given the previous assault, and continuing harassment, her belief

was premised in fact and was not "imaginary, trifling, and

whimsical." Domenico, supra, 192 N.J. Super. at 288. In sum,

claimant left her employment out of a genuine and reasonable

concern for her personal health and subsequent to SSI's failure

to take reasonable and promised steps to ensure the harassment

ended.

 The Board has the "authority to engage in a plenary, [de

novo] review of the evidentiary record; i.e., to make findings

 14 A-2667-15T4
independent of those made on the Appeal Tribunal level, and to

conduct further evidentiary hearings." Messick v. Bd. of Review,

420 N.J. Super. 321, 326 (App. Div. 2011). Here, the Board chose

not to do so. Rather, the Board affirmed and adopted the findings

of fact of the Tribunal. In the absence of making independent

findings, the Board's conduct is measured by that of the Tribunal.

In adopting the Tribunal's findings disqualifying claimant, we

hold the Board acted arbitrarily and capriciously.

 Reversed and remanded for a determination of benefits. We

do not retain jurisdiction.

 15 A-2667-15T4