## Jack DAVES v. SEARS ROEBUCK & CO. & The COMMISSIONER of LABOR for the State of Arkansas

73-169                                   502 S.W. 2d 106

### Opinion delivered December 17, 1973

*William M. Stocks,* for appellant.

*Herrn Northcutt,* for appellees.

LYLE BROWN, Justice. This is an appeal from the denial of unemployment compensation benefits. The local agency for unemployment compensation at Ft. Smith denied the claim; that action was appealed to the appeals tribunal, where after a hearing by the referee the claim was again denied; the matter then went to the board of review and the referee was upheld; and the circuit court affirmed. The single finding upon which denial of compensation was based was that claimant-appellant did not make reasonable efforts to preserve his job rights. The one point for reversal is stated thusly: "The appellant relies upon the fact that had he applied for job preservation rights due to illness under the circumstances of this case, they would have been denied by the employer, that an effort to obtain employment in another department of the same store would not have relieved the circumstances resulting in the condition requiring the job change and that under

these circumstances, to require an exercise in futility is unreasonable and not required by the language of the unemployment compensation act". Succinctly stated, appellant contends that a secondary cause of his illness was the pressure of the sales work and that he was medically advised he should seek employment elsewhere.

Appellant testified that on November 3, 1971, he had an unpleasant verbal confrontation with the store manager and suffered severe chest pains; that he went to a doctor; that his condition was diagnosed as viral upper respiratory illness and hyperventilation syndrome; that he was permitted by the doctor to return to work on November 18, with the admonition that he was to return to the doctor if he had a recurrence. There was shortly a recurrence and claimant says he was advised by the doctor to change his employment because of the history of stress. On November 26, 1971, appellant went to Mrs. Shields, the personnel manager and resigned. Appellant concedes that he made no effort to preserve any job rights because he was not aware of them and also, that it would have been a vain thing to do because he would, as long as he worked in sales, be under the same pressure which contributed to his illness. He further asserted Mrs. Shields should have advised him of any benefits to which he was entitled.

On November 29, 1972, appellant filed a claim for benefits indicating the reason to be "extreme pressure". The local office of employment security determined that appellant left his work "for reasons other than good cause in connection with the work" and was therefore not entitled to any benefits. Appellant timely filed a petition for appeal to the referee and for his reason stated: "I feel that I had good cause to leave since I was under extreme pressure and my doctor advised that I get away from that job".

A hearing was conducted pursuant to the appeal on January 5, 1972. Appellant stated that he discussed his physical problems with Mrs. Shields on November 26, the day he resigned. "I did not ask for leave of absence and I did not request transfer to other work with Sears." A letter from appellant's doctor was introduced:

Mr. Daves was seen initially by myself in the early part of November because of upper respiratory illness and some chest pain and secondary hyperventilation syndrome. He was evaluated. No serious difficulty was found. His diagnosis was a viral upper respiratory illness and hyperventilation syndrome. Part of his difficulty is secondary to pressure from his work. He returned to work on the 18th of November and had recurrence of his hyperventilation syndrome which was felt to have been due to pressure of his job. It was felt that he should make a change in his employment because of his physical reaction to the stress of his job. It has been recommended that he seek other employment.

Appellant explained that he was a floor salesman, dealing in household appliances of varied types. He attributed the pressure from his supervisors to two principal sources. First, he got a red mark if he sold more than seven percent of "leader merchandise". "If you sell over seven percent, they put you in the shoe department or move you out of the department. I mean just constantly threatening you all the time to move you to a lesser job." The other source of pressure he described as pertaining to the sale of service contracts. Of the 100% of his sales of appliances he said he had to sell 60% service contracts on those items "or you'd be threatened to move you into the grease pit or something like that or move you out someplace else where less desirable work was accomplished, compatible to the type work that I do". He related that the described pressures developed during the last year he worked. He also said the pressures were standard to all Sears' salesmen.

Appellant testified he did not ask Mrs. Shields for transfer to another job because selling was the type of work in which he had years of experience. He said he did not ask for a leave of absence because the doctor had recommended he get out of the pressured job and get into some other type selling. He reiterated he was not offered a transfer or a leave of absence.

Mrs. Shields testified for Sears. She said there were seven other salesmen in appliances who work under the

same conditions as appellant. The tenure of other salesmen ran 24, 15, and 12 years, down to less than a year. She explained that Sears tried to keep the sales up "and Jack (appellant) was the low man in sales and maintenance agreements, so I'm sure he did feel more pressure than some of the others". She stated that the company granted leaves for illness, and tried to grant permission to transfer whenever requested. She said appellant did not ask for leave at the time he resigned and as to transfer, "he stated he would not be interested working in another department". She related that appellant gave as his reason for quitting, "that the job interfered with his health, according to his doctor". She testified she subsequently went to appellant's home to get written permission from him to authorize his doctor to give Sears a statement; that appellant refused to sign such a release; and that the doctor therefore refused to release any information.

Appellant called as his witness a former appliance salesman for Sears. Mr. West generally corroborated appellant with reference to the pressure put on salesmen.

The referee made a finding that "the claimant voluntarily quit his last work with the above named employer without making reasonable efforts to preserve his job rights prior to quitting. It was not established that the claimant was under any more pressure in his work than other salesmen employed by this employer in the same department. The claimant did not make an effort to preserve his job rights with this employer by requesting transfer to other work, as he felt that the other jobs to which he might be transferred might not enable him to earn the commission he had customarily earned in the household appliance department". Then the referee cited the only section of law that is applicable to a resolution of this case, being a portion of Ark. Stat. Ann., § 81-1106 (Supp. 1971):

For all claims filed on and after July 1, 1971, if so found by the Commissioner, an individual shall be disqualified for benefits:

(a) If he voluntarily and without good cause connected with the work, left his last work. Such disqualification shall continue until, subsequent to filing his claim, he has had at least 30 days of paid work.

Provided no individual shall be disqualified under this subsection if, after making reasonable efforts to preserve his job rights, he left his last work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification; or, if after making reasonable efforts to preserve his job rights, he left his last work because of his illness, injury or disability.

The claimant perfected an appeal and a hearing was conducted for the board of review on February 18, 1972. At that hearing appellant appeared with his attorney and the latter examined Mrs. Shields. She was questioned at length about the policy of Sears with reference to leave of absence due to illness. In that respect she stated that Sears has a very liberal policy. It is not necessary that we discuss illness benefits because that is not a part of the unemployment compensation law. To draw unemployment compensation a worker must be able to work and be available for work. Ark. Stat. Ann. § 81-1105 (c) (Supp. 1971). Illness benefits are completely aside from the issue of unemployment benefits which are the subject of this litigation.

Another letter from appellant's doctor, dated February 15, 1972, was read to Mrs. Shields. In essence it stated that the doctor recommended claimant change jobs within the firm; that his patient felt that would be undesirable because he would be under the same pressure from the same supervisors; that the doctor therefore recommended that appellant change jobs entirely, that is, to another company. Mrs. Shields testified that had Sears been presented with the letter, it would have granted sick leave, and had appellant requested it, he would probably have been granted a different job within the firm. In fact, she stated there was an opening in home improvement sales on November 26, 1971, concerned with selling air moving equipment, such as cooling, heating and plumb-

ing, at which job appellant could have made more commission.

The board of review sustained the findings of facts and conclusions of law made by the referee. That finding was affirmed by the circuit court on appeal.

In deciding these cases we follow the substantial evidence rule. *Terry Dairy Products Co.* v. *Cash,* 224 Ark. 576, 275 S.W. 2d 12 (1955). It is undisputed that appellant made no effort to preserve any job rights, such as a request for transfer to another department. We reiterate: we are not here adjudicating any right to illness benefits because that benefit is a matter between employer and employee based on the policy of the company; it is not a right granted by the unemployment compensation act.

Affirmed.