James OXFORD *v.* Charles L. DANIELS,
Director of Labor, and MOORE COMPANY

E 80-194                                          618 S.W. 2d 171

Court of Appeals of Arkansas .
Opinion delivered July 1, 1981

*Thurston A. Thompson*, for appellant.

*Thelma Lorenzo*, for appellees.

DONALD L. CORBIN, Judge. This is an appeal from the Arkansas Employment Security Division denying unemployment compensation to the appellant, James Odis Oxford, on the ground that he had voluntarily and without good cause connected with the work, left his last work. The decision was affirmed by the Appeal Tribunal and the Board of Review.

On or about January 17, 1980, the appellant was hired by the Moore Company of Springdale, Arkansas. His duties required him to pack tools into boxes for shipment. In March, 1980, the Moore Company transferred its packing function to another location and discharged appellant. On March 28, 1980, appellant filed for unemployment compensation and was found qualified to receive payments. On or about July 7, 1980, the appellee contacted appellant about accepting a position operating a grinder machine. Appellant was reluctant to accept the job as a grinder machine operator because he had poor eyesight in one eye and no kneecap on one of his knees. He reminded his prospective employer, the appellee's personnel officer, of these handicaps. Apparently, after conferring with the supervisor of the grinding operation, the personnel officer told appellant that they thought he could handle the job. Appellant worked three days and quit. He stated that he quit because standing in one place all day caused him to ache all over and he could not see well enough to perform the job properly.

Section 5(a) of the Arkansas Employment Security Law [Ark. Stat. Ann. § 81-1106 (a) (Supp. 1979)] provides that an individiual shall be disqualified for benefits "if he voluntarily and without good cause connected with the work, left his last work." A worker who leaves his work because of illness, injury, pregnancy, or other disability, may escape

disqualification under said section 5(a) if he makes reasonable efforts to preserve his job rights before quitting.

Ark. Stat. Ann. § 81-1106(c)(1) (Repl. 1976) provides as follows:

> In determining whether or not any work is suitable for an individual and in determining the existence of good cause for voluntarily leaving his work under subsection (a) of this section, there shall be considered among other factors, and in addition to those enumerated in paragraph (2) of this subsection, the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, the length of his unemployment, his prospects for obtaining work in his customary occupation, the distance of available work from his residence and prospects for obtaining local work.

The sole question for us is whether there is substantial evidence to support the agency's finding that appellant did not have good cause connected with the work for leaving his job. We do not find there is substantial evidence to support the agency's finding.

Appellant was 54 years old with a seventh grade education. He had worked as a laborer during his entire lifetime and had never earned over $3.75 per hour. The appellant should not be penalized because he made a mistake and accepted the job in good faith, hoping that he could handle it and trusted his supervisors to take his handicaps into consideration and advise him as to his compatibility with the work to be assigned. The appellant could just as easily have declined the position offered and continued to draw unemployment compensation on the grounds that his visual defect and his infirmed leg made him incapable of successfully operating the machine. In fact, a letter from William Smiley, personnel officer with the appellee company, stated: "[I]t is my own personal opinion that through Mr. Oxford's desire to work he allowed himself to come to a job for which he was not physically able to maintain. . . . I agree with Mr. Oxford that he made an error

in judgment regarding his physical limitations. Additionally, I feel that if it were not for his own sincere efforts to obtain full time employment, this situation would not have occurred."

The Supreme Court of Arkansas in *Harmon* v. *Laney*, 239 Ark. 603, 393 S.W. 2d 273 (1965), quoting from *Dahman* v. *Commercial Shearing & Stamping Co.*, 170 N.E. 2d 302 (Ohio, 1960) stated, "This is to say, the act should be liberally construed so as to insure a subsistence bridge for those who have been separated from employment under conditions whereby they are ready, willing and able to work, but cannot conscientiously secure it during the period of separation." The Arkansas Supreme Court went on to state, "Strict constructions which result in defeat of the intended purposes of the Act will not be sanctioned by this court."

Another court has held that when, because of economic factors, workmen may be forced to experiment with work outside their fields in an effort to find some employment, such workers would not be barred from receiving benefits for making such laudable efforts. *Wojcik* v. *Board of Review*, 58 N.J. 341, 277 A. 2d 529 (1971), reported at 76 Am. Jur. 2d *Unemployment Compensation* § 69.

In the instant case, Mr. Oxford was entitled to believe that no other position would be available to him. For him to have made an effort in this instance to preserve his job rights would have required him to make what would have amounted to a futile gesture. He had been told that the grinding machine position was the only one available to him.

Reversed and remanded.