Michael STUART *v.* William F. EVERETT, Director of Labor and STERLING STORES

E 81-220                                        631 S.W. 2d 25

Court of Appeals of Arkansas
Opinion delivered April 7, 1982

*Sandra A. DeBoer* and *Katherine D. Ehrenberg,* Central Ark. Legal Services, for appellant.

*Gary W. Williams,* for appellees.

DONALD A. CORBIN, Judge. In this unemployment compensation case the Board of Review held that appellant, Michael Stuart, was disqualified from receiving benefits

because he had voluntarily and without good cause connected with the work left his last work. We reverse.

Appellant had been employed at Biomedics Laboratory for six years prior to his termination on March 3, 1981. He was office manager at Biomedics and his annual salary was $11,700 at the time his employment terminated. He applied for unemployment benefits on March 6, 1981. The record reflects that appellant was not given any information regarding his rights and duties under the Arkansas unemployment compensation law at that time. On March 13, 1981, ten days after his employment terminated at Biomedics, appellant obtained employment with the Sterling Stores warehouse as a laborer earning $3.75 per hour. This job basically involved manual labor. Although the record is not entirely clear, it appears that appellant first saw a slide presentation setting forth his rights to benefits on March 19th and received a benefits pamphlet on April 28, 1981. On April 7, 1981, he terminated his employment with Sterling Stores. Appellant renewed his initial claim for unemployment compensation benefits and, on May 1, he was informed that his request was denied because of disqualification under Section 5 (a) of the Arkansas Employment Security Act, Ark. Stat. Ann. § 81-1106 (a) (Supp. 1979). The Appeal Tribunal and the Board of Review affirmed the agency's decision.

Section 5 (a) of the Arkansas Employment Security Law provides that an individual shall be disqualified for benefits "if he voluntarily and without good cause connected with the work, left his last work." Section 5 (c) (1) [Ark. Stat. Ann. § 81-1106 (c) (1) (Repl. 1976)] provides as follows:

> In determining whether or not any work is suitable for an individual and in determining the existence of good cause for voluntarily leaving his work under subsection (a) of this section, there shall be considered among other factors, and in addition to those enumerated in paragraph (2) of this subsection, the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, the length of his unemployment, his pros-

pects for obtaining work in his customary occupation, the distance of available work from his residence and prospects for obtaining local work.

The appellant contends that he should not be penalized by disqualification from benefits for attempting work which was not suitable to his abilities and background.

Appellant stated at the hearing that he had taken the job as a laborer because he was "unemployed and needed a job". The thrust of appellant's testimony at the hearing was to the effect that he had immediate financial burdens to meet and he did not realize that he would have a reasonable amount of time to look for work commensurate with his skills and prior experience. Appellant indicated that he quit his employment with Sterling Stores after three and one-half weeks because "the job was more than I could handle, I had never done work of that sort before."

In *Oxford* v. *Daniels,* 2 Ark. App. 200, 618 S.W. 2d 171 (Ark. App. 1981), this court stated as follows:

> The appellant should not be penalized because he made a mistake and accepted a job for which he was unsuited. It is evident that he accepted the job in good faith, hoping that he could handle it . . .   .

This court in *Oxford* v. *Daniels, supra,* cited with approval the New Jersey case of *Wojcik* v. *Board of Review,* 58 N.J. 341, 277 A. 2d 529 (1971). In *Wojcik* v. *Board of Review, supra,* the court stated:

> It is clear that one need only apply for and accept suitable work.   . . . It is equally clear that in the present case Wojcik could have refused the work at Union Carbide as not being "suitable." It involved a substantial reduction from his "prior earnings" and was totally inconsistent with his "prior training" and "experience." . . . The question is whether a person who takes work he is not required to take should suffer the loss of unemployment benefits when he is unable to cope with that work. We do not believe he should.   . . .

We do not believe a person should be penalized for so laudable an effort. . . . It is well known that today many highly trained persons are unable to find work in their own fields because of economic factors beyond their control. If they are to work at all, many must experiment in new areas which are not "suitable" under the statute. They should be given a reasonable time to measure their ability to cope with their new work, and to reapply for benefits if they cannot.

We concur in the reasoning in *Wojcik* v. *Board of Review, supra,* and this case is reversed and remanded for the Board of Review to award benefits to appellant.

Reversed and remanded.

MAYFIELD, C.J., and CRACRAFT, J., dissent.

MELVIN MAYFIELD, Chief Judge, dissenting. My disagreement with the majority is with the facts involved in this case, not with the law.

The majority opinion says that claimant quit his job because it was more than he could handle. The claimant's testimony in that regard was that the work caused him to have headaches but his doctor did not tell him that his headaches were job related and his doctor did not advise him to quit.

The duties of the job were in evidence and the issue presented was a question of fact for the board, not us, to decide. In *Harris* v. *Daniels,* 263 Ark. 897, 567 S.W. 2d 954 (1978), the Arkansas Supreme Court said:

Even though there is evidence upon which the Board of Review might have reached a different result, the scope of judicial review is limited to a determination whether the board could reasonably reach its results upon the evidence before it and a reviewing court is not privileged to substitute its findings for those of the board even though the court might reach a different conclu-

sion if it had made the original determination upon the same evidence considered by the board.

I would affirm the decision of the Board of Review.

CRACRAFT, J., joins in this opinion.