GORDOS ARKANSAS, INC. *v.* Dewey STILES, Director of Labor, and Mary Louise WARDEN

E 84-182                                          696 S.W.2d 320

Court of Appeals of Arkansas
Division II
Opinion delivered September 25, 1985

*Ramsey, Cox, Lile, Bridgforth, Gilbert, Harrelson & Starling*, by: *John D. Davis*, for appellant.

*George R. Wise, Jr.*, for appellee.

DONALD L. CORBIN, Judge. Appellee, Mary Louise Warden, was awarded benefits by the Board of Review which reversed a decision of the Appeal Tribunal on a finding that appellee had voluntarily left her last work with appellant Gordos Arkansas, Inc., due to illness, injury, or disability after making reasonable efforts to preserve her job rights. We reverse and remand.

The issue on appeal is whether there is substantial evidence to support the Board of Review's decision that appellee quit her job with appellant because of medical problems and that she made reasonable efforts to preserve her job rights.

Ark. Stat. Ann. § 81-1106(a) (Supp. 1985), provides:

> For all claims filed on or after July 1, 1973, if so found by the Director an individual shall be disqualified for benefits:
>
> . . . .
>
> Provided . . . if after making reasonable efforts to preserve his job rights, he left his last work because of his illness, injury, pregnancy or other disability.

For reversal of the Board's finding that appellee quit her job because of medical problems, appellant relies heavily upon appellee's written resignation which stated: "I'm moving to Wichita, Kansas, with my husband. There is no work here for him. I'm leaving April 28. This will be my last day at Gordos. Signed: Mary Warden, April 5, 1983." Appellee contended she quit her job because she hurt her back and had to move to Kansas to have back surgery. Appellant contends that our determination of this question depends on which of appellee's contradictory stories one believes; that is, did she quit to follow her husband to Kansas or did she quit to go to Kansas because she needed

surgery.

The evidence reveals that appellee received a compensable injury while employed by appellant on January 3, 1983, and was paid Workers' Compensation benefits. She was released by her physician to return to work on March 4, 1983. She gave her written resignation on April 5, 1983. Appellee did not show up for work on or after April 14, 1983, although she had stated in her resignation that April 28, 1983, would be her last day. On May 16, 1983, a physician in Kansas who had formerly treated appellee for a prior back condition examined her and on June 2, 1983, performed surgery on her back. Appellant paid Workers' Compensation benefits in connection with this surgery as it was related to her January 3, 1983, injury. There was a note entered in evidence from appellee's Arkansas physician, Dr. W.G. Swindell, which stated: "Mary L. Warden was seen in my office on April 18, 1983, for persistent low back pain and probable herniated nucleus pulposus and nerve root irritation on the left. Hospitalization with complete bedrest, analgesics and intense physical therapy was recommended, but Mrs. Warden chose to go to Wichita instead, and be hospitalized there. Thank you. Signed: W.G. Swindell, M.D."

From our review of the record, we believe there is substantial evidence to support the finding by the Board of Review that appellee left her employment with appellant because of her injury.

The next question to be decided is whether the Board's finding that appellee made reasonable efforts to preserve her job rights is supported by substantial evidence. We hold that it is not. Appellee Director of Labor concedes that appellee Mary Louise Warden took no active steps to preserve her job rights as required by Ark. Stat. Ann. § 81-1106(a), but contends that it would have been a futile gesture on appellee's part pursuant to our holding in *Oxford* v. *Daniels*, 2 Ark. App. 200, 618 S.W.2d 171 (1981).

We believe *Oxford, supra,* is distinguishable. There, Oxford had been discharged by his employer and drew unemployment benefits for 3½ months before accepting a different position as grinder machine operator at the company's request. Oxford was reluctant to accept this job because of his poor eyesight and the fact that he did not have a kneecap in one knee. Oxford quit after

three days because of what he described as aching all over and an inability to see well enough to perform the job properly. The personnel officer for the employer recognized Oxford's willingness to try a job that both he and Oxford suspected he could not do. In addition, the employer stated that it was the only job available within the company for Oxford. Under these facts, any attempt by Oxford to preserve his job rights would have been a futile gesture.

In the instant case there was no indication by appellant that there were no other jobs available which would be suitable to appellee. Appellee had in the past taken advantage of the company's leave policy. One such leave was for medical reasons. In fact, Karen Lugeanbeal, personnel director for appellant, testified that the company had a record of not turning down anyone's request for a leave of absence, especially if it was for a medical reason.

In *Oxford, supra*, the employer was aware that Oxford was unable to perform the assigned job and knew it did not have another job for him. In the instant case, appellee indicated that she chose to remain in Kansas and has not, to this day, requested her old job back nor asked if there was another job available with appellant compatible with her injury. We fail to find any excuse for appellee's failure to make reasonable efforts to preserve her job rights with appellant. Nor does the evidence support the conclusion that any attempt on her part to obtain a leave of absence would have been a futile gesture.

■■ We are not unmindful of the policy announced in *Harmon* v. *Laney*, 239 Ark. 603, 393 S.W.2d 273 (1965), wherein it was stated: "Strict constructions which result in defeat of the intended purposes of the Act will not be sanctioned by this court." However, Ark. Stat. Ann. § 81-1106(a) clearly provides that an individual must make reasonable efforts to preserve his or her job rights in order to avoid disqualification for benefits. There is no evidence to support the Board's finding that appellee made reasonable efforts to preserve her job rights. Accordingly, we reverse and remand for the Board of Review to issue an order denying benefits to appellee because of her total failure to make reasonable efforts to preserve her job rights.

Reversed and remanded.

COOPER and GLAZE, JJ., agree.