WESTERN SIZZLIN OF RUSSELLVILLE, INC.
*v.* DIRECTOR OF LABOR

E 88-66                                          783 S.W.2d 875

Court of Appeals of Arkansas
En Banc
Opinion delivered February 14, 1990

*Peel and Eddy*, by: *David L. Eddy*, for appellant.

*Bruce H. Bokony*, for appellee.

MELVIN MAYFIELD, Judge. Appellant, Western Sizzlin of Russellville, appeals a decision of the Board of Review holding that the claimant left her last work due to illness after making a reasonable effort to preserve her job rights.

The evidence showed that claimant, Nancy Myers, was frequently late to work, or absent from her work. On June 5, 1987, she was given a written warning which stated:

> Late for work Fri. A.M.
>
> Nancy has been late or has missed work several times in the past 3 weeks.
>
> This should be considered her final warning. Any more unexcused absences will result in termination.

This warning was signed by Mark Bazyk, appellant's owner, and Nancy Myers.

On August 22, 1987, another written warning was issued for substandard work and failing to show for her shift. This warning states it is claimant's last warning, if she cannot work when scheduled, she will no longer "work here." Claimant's last scheduled work was August 25, 1987, but she did not show up.

Claimant testified she did not show up or call in on August 25 because she was abusing a drug called "Dilaudid" and did not know what was going on. Two weeks later, she was taken to a detox clinic by her sister. Claimant testified she did not notify appellant of what was going on because she thought she had lost her job. She said she was in very bad shape because of the effects of the drug and really did not care whether she lost her job or not. She also admitted that she had missed work back in April; that this was also drug related; and that she had been given a warning at that time not to miss another day within three to six months without calling in or giving notice.

Harold Litton, appellant's manager, testified that the claimant never came in or discussed her drug problem; that if she had called in or someone had contacted them and explained what was happening, they would have worked with her very hard. He said he would have considered giving her whatever time off was necessary to go through detox and then to return to work; however, she made no effort to get back to them until they got her

unemployment claim.

The Employment Security Division denied benefits finding claimant quit her work because of disability, but had not shown that she made reasonable efforts to preserve her job prior to leaving. This decision was reversed by the Appeal Tribunal which found that since the drug precluded claimant from thinking clearly about her situation, it would be an inequity to disqualify her for not calling her employer about her situation. "Therefore," it was concluded, "she left last work due to illness, after making a reasonable effort to preserve her job rights." The Board of Review affirmed and adopted the decision of the Appeal Tribunal.

For reversal, appellant makes two arguments. First, it argues that the claimant should not receive unemployment benefits for an inability to work caused by "self-induced drug addiction." However, we do not find it necessary to address that issue. Appellant's other argument is based upon its contention that the Board's finding that claimant made a reasonable effort to preserve her job rights is not supported by substantial evidence.

Arkansas Code Annotated § 11-10-513 (1987) (formerly Ark. Stat. Ann. § 81-1106(a) (Supp. 1985)) provides as follows:

> (a)(1) If so found by the director, an individual shall be disqualified for benefits if he, voluntarily and without good cause connected with the work, left his last work.
>
> (2) . . . .
>
> (b) No individual shall be disqualified under this section if, after making reasonable efforts to preserve his job rights, he left his last work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification or if, after making reasonable efforts to preserve job rights, he left his last work because of illness, injury, pregnancy, or other disability.

Cases applying this statute have recognized that legislation providing for unemployment benefits is remedial in nature and should be liberally construed, but the cases have not rendered the statute meaningless. In *Gordos Arkansas, Inc.* v. *Stiles*, 16 Ark. App. 30, 696 S.W.2d 320 (1985), this court said:

We are not unmindful of the policy announced in *Harmon* v. *Laney*, 239 Ark. 603, 393 S.W.2d 273 (1965), where it was stated: "Strict constructions which result in defeat of the intended purposes of the Act will not be sanctioned by this court." However, Ark. Stat. Ann. § 81-1106(a) clearly provides that an individual must make reasonable efforts to preserve his or her job rights in order to avoid disqualification for benefits. There is no evidence to support the Board's finding that appellee made reasonable efforts to preserve her job rights. Accordingly, we reverse and remand for the Board of Review to issue an order denying benefits to appellee because of her total failure to make reasonable efforts to preserve her job rights.

16 Ark. App. at 33. In *Daves* v. *Sears Roebuck & Co.*, 255 Ark. 723, 502 S.W.2d 106 (1973), the Arkansas Supreme Court affirmed the denial of benefits and said: "It is undisputed that appellant made no effort to preserve any job rights, such as a request for transfer to another department." And in *Timms* v. *Everett*, 6 Ark. App. 163, 639 S.W.2d 368 (1982), we said: "This court has held that an individual may preserve his job rights by requesting a leave of absence from his employer."

In the instant case, the claimant signed a form, submitted to the Employment Security Division for the purpose of obtaining unemployment compensation, in which she said it was necessary for her to quit her job because she was "addicted to Dilaudid for 8 months prior to quitting." The Appeal Tribunal's decision, adopted by the Board of Review, found that "claimant missed a considerable amount of time from work for this employer because she was abusing the drug, Dilaudid." The claimant admits that she was told in April that she should not miss work again without giving notice, and it is undisputed that on June 5, 1987, the claimant was given a written warning, which she signed, stating that any more unexcused absences would result in termination. Faced with the above circumstances, it is clear that making a reasonable effort to preserve her job rights would require more than simply waiting until she had to miss work again in August and then filing a claim for unemployment benefits.

Claimant argues, however, that since she had been "warned

that any further absence would result in termination" she was "not required to preserve her job rights when to do so would have been a futile gesture." *Graham* v. *Daniels*, 269 Ark. 774, 601 S.W.2d 229 (Ark. App. 1980), and *Oxford* v. *Daniels*, 2 Ark. App. 200, 618 S.W.2d 171 (1981), are cited as authority for claimant's argument. In *Graham*, the employee had asked for transfers to other areas of work but, even though his requests were granted, his asthmatic condition persisted and when his employer said there were no other jobs available the claimant quit. In *Oxford*, the employee was given a job which, because of physical handicaps, he could not perform. However, he had told the employer of his handicaps and had been informed that this was the only position available, and "they thought he could handle the job." The employee had to quit because of his disability, but he was allowed unemployment benefits because he "was entitled to believe that no other position would be available to him."

Obviously, the instant case is unlike either *Graham* or *Oxford*. Had the claimant here told her employer back in April or in June that she had a drug problem and wanted a leave of absence to go to a detoxification unit, she would be in position to claim she had made a reasonable effort to preserve her job rights. Or, if claimant had simply asked her employer to be indulgent in case she missed work because of her drug problem, there would be some evidence to cite in support of her claim that a reasonable effort to preserve job rights had been made. The owner of the business where claimant was employed testified that the claimant was a very good worker and that they try to work with their employees. He gave two examples where employees were given leave to take care of personal situations. But he was not aware of the claimant's problem and she had not even contacted them after she got through with her detox treatment. Here, as we said in *Gordos*, *supra*, the claimant "took no active steps to preserve her job rights." In *Shipley Baking Co.* v. *Stiles*, 17 Ark. App. 72, 74, 703 S.W.2d 465 (1986), we said:

> It is essential that the Board's findings of fact be supported by substantial evidence upon which a particular conclusion could reasonably have been reached. We are not at liberty to ignore our responsibility to determine whether the standard of review has been met.

■ In the instant case, we cannot hold that the Board of Review's finding that the claimant made a reasonable effort to preserve her job rights is supported by substantial evidence. Therefore, the decision of the Board is reversed and the claim for unemployment benefits is dismissed.

COOPER, J., dissents.

JAMES R. COOPER, Judge, dissenting. Our function in Employment Security Division cases is to determine whether the record contains substantial evidence to support the decision reached by the Board of Review. *Swan v. Stiles*, 16 Ark. App. 27, 696 S.W.2d 765 (1985). The Board's findings are conclusive on appeal if supported by substantial evidence. *Cooney v. Daniels*, 270 Ark. 930, 606 S.W.2d 615 (Ark. App. 1980). Even where the evidence is undisputed, the drawing of inferences is for the Board, not the courts. *Willis Johnson Co. v. Daniels*, 269 Ark. 795, 601 S.W.2d 890 (Ark. App. 1980). We are not permitted to hear the case *de novo* by substituting our findings for those of the Board. *Id.*

The facts of this case are simple. The claimant testified that she had been warned that she would be terminated if she missed another day of work. Subsequently, she did miss another day of work because of drug addiction for which she was later treated in a clinic. She did not notify her employer that she would be unable to report for work because she was so disoriented by the drug that she did not know what was happening. There was no one with her that could have notified her employer.

The Board found that, because of the drug, the claimant could not think clearly and did not realize that she should notify her employer that she would be unable to report to work. The Board concluded that the claimant's drug abuse was an illness and that her efforts to preserve her job rights were reasonable under the circumstances.

I think it apparent that reasonable minds could conclude that a condition requiring clinical treatment and therapy is an illness. It seems equally apparent that failing to contact one's employer is all that can be reasonably expected of a person who is so disoriented that she does not know what day it is, or what is happening around her.

Our review should end at this point with affirmance. The majority, however, has departed from the substantial evidence standard of review and has, in effect, tried this case *de novo* and found that the claimant was not so disoriented by her addiction between June 5, 1987, and August 22, 1987, that she was unable to recognize the implications of her drug abuse with respect to her employment and communicate her problem to her employer. If this issue must be resolved before this case can be decided, we should remand it to the Board with directions to make the appropriate findings. *See Massey* v. *Barnes*, 1 Ark. App. 329, 615 S.W.2d 398 (1981). That is the exclusive province and function of the Board, which we may not usurp. *See Willis Johnson Co.* v. *Daniels, supra.* I dissent.