James E. BOOTHE *v.* DIRECTOR,
Employment Security Department

E 97-36

954 S.W.2d 946

Court of Appeals of Arkansas
Division III
Opinion delivered November 12, 1997

*Sara Sawyer*, for appellant; no brief filed.

*Phyllis Edwards*, for appellee; no brief filed.

JOHN F. STROUD, JR., Judge. Appellant James E. Boothe appeals a decision of the Board of Review denying him unemployment compensation benefits in accordance with Ark. Code Ann. § 11-10-513 (Repl. 1996) upon a finding that appellant left his employment without good cause connected with his work and without making reasonable efforts to preserve his job rights. The Board's decision reversed the Appeal Tribunal's finding that appellant had good cause for quitting his job. Appellant argues that the Board's decision is not supported by substantial evidence. We agree and reverse and remand to the Board of Review to award appellant benefits.

On review of unemployment compensation cases, the factual findings of the Board of Review are conclusive if they are supported by substantial evidence; but that is not to say that our function on appeal is merely to ratify whatever decision is made by the Board of Review. *See Shipley Baking Co. v. Stiles*, 17 Ark. App. 72, 703 S.W.2d 465 (1986). As we said in *Shipley*, "We are not at liberty to ignore our responsibility to determine whether the standard of review has been met." 17 Ark. App. at 74, 703 S.W.2d at 467. When the Board's decision is not supported by substantial evidence, we will reverse. *Sadler v. Stiles*, 22 Ark. App. 117, 735 S.W.2d 708 (1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Victor Industries Corp. v. Daniels*, 1 Ark. App. 6, 611 S.W.2d 794 (1981).

Appellant had been employed as a mechanic at the Coast to Coast Store in Dumas since March 11, 1992, and his wife, Darlene Boothe, had been employed as a secretary there for between nine

and ten years. The Dumas Coast to Coast store is a family business that is owned by Mr. and Mrs. James Berry, and their son, Tommy Berry.

Evidence was produced at the hearing that for a period of several months before she quit working for Coast to Coast, Darlene Boothe had been the victim of overt acts of sexual harassment by James Berry during working hours, including touching her breasts and patting her buttocks, suggesting that she help him use the bathroom because his hands were dirty, and making other inappropriate remarks with sexual innuendo.

Darlene testified that she asked James Berry to discontinue this unacceptable conduct and that he apologized to her, but the harassment continued. Finally one day when James Berry made a gesture and comment about how good it would feel to put his hands between her legs, Darlene became so nervous and upset that she had to leave the store. As a result of the harassment, Darlene decided to resign. However, before resigning, she discussed the situation with James Berry, who again apologized for his behavior, and who agreed that the store would not contest her claim for unemployment benefits. She resigned and received unemployment benefits.

Shortly before Darlene's resignation, she informed her husband, the appellant, about the sexual harassment that had been directed toward her by James Berry. Appellant contacted a private detective, and a plan was conceived to fit Darlene with a body microphone and for Darlene to engage James Berry in a recorded conversation in an attempt to get him to admit that he had been engaging in a course of sexual harassment toward Darlene. The plan was carried out, and, during the course of their conversation, James Berry made incriminating statements to Darlene about his sexual advances toward her.

Rather than confront James or Tommy Berry about the problem, appellant requested a one-week vacation and never returned to work for Coast to Coast. Appellant filed a claim for unemployment benefits, contending that he resigned because of the sexual harassment inflicted upon his wife by James Berry.

Appellant's application was denied by the Employment Security Department because of his failure to submit proof in support of his allegation that James Berry had harassed his wife. Appellant appealed the denial and, following a hearing at which the tape recording of Darlene's conversation with James Berry was introduced as evidence, the Appeal Tribunal held that under the same or similar circumstances, the average able-bodied worker would quit rather than continue to work for an employer that condoned the sexual harassment of his wife.

Evidence introduced at the hearing also revealed that after Tommy Berry learned about the charges of sexual harassment against his father, his investigation consisted of merely asking his father if the charges were true, receiving his father's negative response, and thereafter ignoring the accusations. The Appeal Tribunal decided that appellant voluntarily left his employment at Coast to Coast for good cause connected with his work, and benefits were awarded.

The Board of Review reversed the decision of the Appeal Tribunal, holding that appellant had voluntarily left his employment without good cause connected with his work and that because he had not reported the harassment to the store's manager, Tommy Berry, he had not taken reasonable steps to preserve his employment. In its decision, the Board stated that Tommy Berry lacked incentive to investigate the allegations of sexual harassment further because when he learned about them appellant and his wife had already resigned.

Evidence adduced at the hearing revealed that the corporate stock of Dumas Coast to Coast was owned 34% by James Berry, and 33% each by Tommy Berry and his mother. Although Tommy Berry testified that he was the store manager, that he was James Berry's supervisor, and that he would fire James Berry if circumstances called for it, other witnesses testified that James Berry and Tommy Berry equally shared in the responsibility of supervising the store's employees; that tax records, business cards, and correspondence of the corporation identified both James Berry and Tommy Berry as owners and managers; that James and Tommy participated equally in the supervision of employees; that

Tommy never overruled James's supervisory decisions; and that both were consulted by employees about matters relating to things such as vacations. It was not disputed that James Berry alone authorized Darlene Boothe to voluntarily resign her employment and receive unemployment compensation benefits. This action is consistent with his role as manager and co-owner.

The Board of Review held that the evidence did not show that reporting the problem to Tommy Berry would have been an act of futility. We disagree. The best evidence of what Tommy Berry would have done to solve the problem had it been brought to his attention sooner is provided by his own testimony of what he actually did when he learned about the harassment allegation, i.e., he ignored it. He testified that he knew there was a tape recording of his father and Mrs. Boothe but he did not listen to it "[b]ecause it. . . that's a private matter. That's, that doesn't have anything to do with me personally. It's an accusation that hasn't really been proved."

Appellant and his wife were justified in believing that reporting the sexual harassment to the perpetrator's son would be futile. This conclusion is supported not only by what Tommy Berry actually did (or, more accurately, what he did not do) when he learned of the problem, but by appellant's justifiable belief that James Berry, as a co-owner of the business, was just as much of a supervisor and manager of the business as was Tommy Berry, and the unrealistic prospect that James Berry would be fired or seriously disciplined by his son.

Arkansas Code Annotated section 11-10-513(b) (Repl. 1996) provides that, as a prerequisite to receiving unemployment benefits, an employee is required to make every reasonable effort to preserve his job rights before leaving employment, *Ahrends v. Director*, 55 Ark. App. 71, 930 S.W.2d 392 (1996), and such reasonable efforts include taking appropriate measures to prevent an unsatisfactory situation on the job from continuing. *Teel v. Daniels*, 270 Ark. 766, 606 S.W.2d 151 (Ark. App. 1980). But an employee is not required to take measures to resolve a problem with his employer if such measures would constitute nothing more than a futile gesture. *Oxford v. Daniels*, 2 Ark. App. 200, 618

S.W.2d 171 (1981). Sexual harassment by her supervisor has been held to be good cause for an employee to voluntarily terminate her employment. *McEwen v. Everett*, 6 Ark. App. 32, 637 S.W.2d 617 (1982). There is no question but that Darlene Boothe had good cause to resign and that she was entitled to receive unemployment benefits. Under the circumstances shown by the evidence in this case, we hold that such good cause also extends to the husband of the victim of the sexual harassment.

Reversed and remanded.

BIRD and GRIFFEN, JJ., agree.