GUARANTEED AUTO FINANCE, INC. *v.*
DIRECTOR, ESD, *et al.*

E 04-377                                                                    213 S.W.3d 39

Court of Appeals of Arkansas
Opinion delivered September 14, 2005

*Cypert, Crouch, Clark & Harwell,* by: *R. Jeffery Reynerson,* for appellant.

*Allan Pruitt,* for appellee.

LARRY D. VAUGHT, Judge. Guaranteed Auto Finance, Inc., appeals from the decision of the Board of Review reversing the Arkansas Appeal Tribunal Hearing Officer. The Board of Review found that Melvin Flores voluntarily left his work for good cause connected to the work, and he was entitled to unemployment benefits. We agree and affirm.

Melvin Flores began working as a salesman for Guaranteed on January 14, 1999. In March and April of 2004, Flores attended several religious seminars and began to observe Saturday as the Sabbath. On May 17, 2004, Flores met with his regional manager, Mike Phillips, to discuss his situation and ask that he be allowed Saturday off work for worship. Flores explained that it was his deeply held religious belief that Saturday was a day of rest and that to work on that day would violate his moral beliefs. He offered to work on Sunday instead or to work Wednesday, his other day off. Although the company is not officially open for business on Sunday, Flores testified that some of the sales personnel come in and work extra hours on Sunday. He argued that although administrative and managerial personnel were not available on Sunday, it was possible for sales representatives to work on Sunday taking applications and drumming up additional business. However, Flores admitted that people who worked extra on Sunday were also required to work Saturday.

Until 2004, Flores had always worked on Saturday. Although every sales representative received two days off a week — Sunday plus one day during the week — all sales personnel were required to work on Saturday because of the amount of business conducted on that day. Flores had worked every Saturday since he was hired except for when he was off for vacation. Flores stated that this was not a problem for him in the beginning because he only recently began celebrating Saturday as the Sabbath.

Flores testified before the hearing officer that after meeting with Phillips, he waited a couple of weeks to receive news regarding what the company had decided to do. Flores stated that he then asked about the status of his request, and he was told nothing had been decided. Flores stated that he had started getting "antsy" because he was still working on Saturday, which he felt violated his religious beliefs. At one point, he asked his manager, Greg Adams, what to do. Flores stated that Adams said he did not want to see Flores fired but that was what would happen if he took Saturday off without permission. Adams told him to take the next Saturday off as a sick day, which Flores did. The next Friday, June 4, 2004, Flores met with John Holbert, who presented the company's refusal to accommodate Flores's request. Holbert explained to Flores that if he did not show up for work on Saturday, he would be fired. Flores then cleaned out his office and left. He did not work on Saturday and did not return to work on Monday.

John Holbert also testified before the hearing officer. He stated that the company was closed on Sunday and provided no administrative support on that day. He stated that the main reason for not being open on Sunday was to provide a positive work environment for his staff — to give them two days off a week, Sunday and one day during the week. Sunday was chosen as the day off for everyone because that was the day most of the company's suppliers and lenders took off. Holbert stated that as an accommodation, he offered Flores the opportunity to apply for any position within the company's other departments that did not work on Saturday. These departments included administration, shop, and detail. Holbert stated that Flores did not apply for a position, but Holbert admitted that he did not know if there was an available position in any of those departments at that time or not. He stated that the company could not have created a position for Flores if one did not exist. There was a high probability that Flores's salary would have been reduced significantly if a position had been open in another department. Holbert disagreed with

Flores's description of what would happen should Flores not show up for work the following Saturday. Holbert stated that he told Flores that if he did not show up for work, he would be treated in accordance with the employee handbook like anyone else who did not show up. Holbert stated that the first occurrence would warrant reprimand and the second would result in termination.

We must decide whether the Board of Review's decision to award Flores unemployment benefits was supported by substantial evidence. In unemployment compensation cases, the scope of review is governed by the substantial evidence rule. *Haig v. Everett*, 8 Ark. App. 255, 650 S.W.2d 593 (1983). We review the evidence in the light most favorable to the appellee, and if there is substantial evidence to support the decision by the Board of Review, it must be affirmed. *Id.* at 258, 650 S.W.2d at 595. Substantial evidence is defined as such relevant evidence as a reasonable person might accept as adequately supporting the conclusion. *Id.*, 650 S.W.2d at 595.

Arkansas Code Annotated section 11-10-513(a)(1) (Supp. 2005) provides that "an individual shall be disqualified for benefits if he or she voluntarily and without good cause connected with the work, left his or her last work." Under Ark. Code Ann. § 11-10-515(c) (Repl. 2002), factors to be considered when determining whether an employee had good cause to voluntarily terminate his or her employment under section 513 include: risk involved to his or her health, safety, and morals; physical fitness and prior training; experience and prior earnings; length of his or her employment; prospects for obtaining work in customary occupation; distance of available work from residence; prospects for obtaining local work. Good cause has been defined as "a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment" and is ordinarily a question of fact for the Board of Review to determine. *Thornton v. Director*, 80 Ark. App. 99, 91 S.W.3d 523 (2002). As a prerequisite for receiving unemployment benefits, an employee is required to make every reasonable effort to preserve his job rights before leaving employment. *Booth v. Director*, 59 Ark. App. 169, 954 S.W.2d 946 (1997).

We recognized in *Haig* that the Supreme Court of the United States has held that conditioning availability of benefits upon a person's willingness to violate "cardinal principles" of their

religious faith effectively penalized the free exercise of constitutional liberties.[1] *Haig*, 8 Ark. App. at 257, 650 S.W.2d at 595 (citing *Sherbert v. Verner*, 374 U.S. 398 (1963)). The Supreme Court in *Sherbert* held that the lower court's ruling denying the claimant benefits forced "her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." 374 U.S. at 404. Additionally, our opinion in *Haig* cites to *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707 (1981), where the Supreme Court, relying on *Sherbert*, held that the denial of unemployment-compensation benefits violated the claimant's First Amendment right to the free exercise of religion. In that case, the Court stated that "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." *Thomas*, 450 U.S. at 717–18.

■■ After a review of the record, we are satisfied that there is substantial evidence to support the Board's decision granting benefits to Flores on a finding that he voluntarily quit his last work for good cause. Flores left his job because his company's requirement that he work on Saturday conflicted with his religious belief that Saturday was the Sabbath. Flores requested an accommodation and attempted to resolve the matter before quitting; however, Guaranteed could not accommodate Flores because it required all its sales personnel to work on Saturday. Although Guaranteed argues that Flores did not make every reasonable effort to preserve his job rights because he did not apply for other positions within the company, there was no evidence presented

---

[1] It should be pointed out that our opinion in *Haig* affirmed the Board's denial of the claimant's compensation benefits. 8 Ark. App. at 258–59, 650 S.W.2d at 595–96. However, our decision was based on the fact that the claimant's reasons for voluntarily quitting his employment were personally motivated, rather than motivated by conduct mandated by his religious beliefs. Therefore, because the claimant was not required to choose between his job duties or his religious beliefs, he did not have good cause to terminate his employment.

that any other employment opportunities were available within the company at the time Flores left. Flores testified that it was his deeply held belief that working on Saturday violated the tenets of his religion. We agree with the Board that Flores had good cause to leave Guaranteed once his constitutionally protected religious beliefs diverged with his job requirements. Moreover, based on *Sherbert* and *Thomas*, Flores cannot be denied unemployment compensation solely because he chose his religion over his job. Therefore, we affirm.

Affirmed.

HART and NEAL, JJ., agree.