Cite as 2020 Ark. App. 483

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** E-20-77

| | |
|---|---|
| COLBERT ENGLISH<br><br>APPELLANT<br><br>V.<br><br>DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, AND OZARK MOUNTAIN POULTRY, INC.<br><br>APPELLEES | **Opinion Delivered:** October 21, 2020<br><br>APPEAL FROM THE ARKANSAS BOARD OF REVIEW<br>[NO. 2020-BR-00111]<br><br>REVERSED AND REMANDED |

## PHILLIP T. WHITEAKER, Judge

Colbert English appeals the Arkansas Board of Review's (Board's) decision denying his claim for unemployment benefits on a finding that he voluntarily left last work due to illness, but without making reasonable efforts to preserve his job rights. We reverse and remand for an award of benefits.

Our standard of review in unemployment-insurance cases is well settled. We do not conduct de novo reviews in appeals from the Board. *Dillinger v. Dir.*, 2020 Ark. App. 138, 596 S.W.3d 62. Instead, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings of fact. *Rockin J Ranch v. Dir.*, 2015 Ark. App. 465, 469 S.W.3d 368. The Board's findings of fact are conclusive if supported by substantial evidence, which is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is

limited to a determination of whether the Board could have reasonably reached the decision rendered based on the evidence presented. *Id*. Credibility calls are for the finder of fact, as is the weight to be accorded to testimony. *Id*. While our role in these cases is limited, we are not here to merely ratify the decision of the Board. *See Boothe v. Dir.*, 59 Ark. App. 169, 954 S.W.2d 946 (1997). Instead, our role is to ensure that the standard of review has been met. *See id*.

English filed for unemployment benefits. Initially, the Department of Workforce Services denied his claim. He appealed the Department's determination to the Appeal Tribunal, which conducted a hearing. The employer did not participate in the hearing, leaving English as the sole witness providing testimony. The Tribunal affirmed the Department's decision. English appealed again. The Board conducted another hearing. Once again, only English participated in the hearing.

The evidence at the hearing established that English had worked for the employer for approximately twenty-one months and was employed as a supervisor in the employer's production facility. Before his employment ended, English suffered a heart attack while on the job, necessitating heart surgery and a three-week medical leave of absence. His doctor initially released him to work with a restriction that he could lift no more than ten pounds. English was told by his employer that he would not be able to return to work with any restrictions, so he obtained a full release from his doctor with the understanding that he would be transferred to a position where physical labor would not be required.

However, when English returned to work, he discovered that the position he was promised had already been filled and that he would have to return to his former supervisory

position, which required him to assist on the floor when there were vacancies and required some physical labor. His requests to transfer to other positions within the department were denied.

English returned to work, working thirteen-hour days, five and six days a week. He soon became concerned about his health with the physical labor he was being required to perform and was afraid he might suffer another heart attack. He asked for leave and was informed by his immediate supervisor that he did not have any leave time remaining, that he couldn't be spared because they were short-staffed, and that he already had Saturday and Sunday off.

English returned to work the next day to find his department was short five workers. English was able to pull two people from other departments, but he still needed to fill in to meet production. This meant English had to stack thirty-pound boxes onto pallets. He stated that this situation had been occurring all week and that he had begged for either more help or to shut down the department as they did during the night shift. His requests were denied.

As the day progressed, English began to feel a pain in his chest. He took an aspirin and went to find his supervisor. When English couldn't find him, he spoke to the human-resources manager. He told her that he had been promised help and had not received it. He informed her that his heart was pounding and that his health was more important than his job. He asked her for some help and then returned to the floor.

Shortly thereafter, he was called into his supervisor's office where he spoke with his supervisor and the assistant plant manager. He was asked about his complaints, and he

informed him that his health was more important than his job. At that point, his employment ended, and he was escorted out of the building by the employer.

An employee is disqualified for benefits if her or she, voluntarily and without good cause connected with the work, leaves his or her last work. Ark. Code Ann. § 11-10-513(a)(1) (Supp. 2019). As a prerequisite to receiving unemployment benefits, an employee is required to make every reasonable effort to preserve his job rights before leaving employment. *See Boothe*, *supra*. Such reasonable efforts include taking appropriate measures to prevent an unsatisfactory situation on the job from continuing. But an employee is not required to take measures to resolve a problem with the employer if such measures would constitute nothing more than a futile gesture. *Oxford v. Daniels*, 2 Ark. App. 200, 618 S.W.2d 171 (1981). Moreover, no individual shall be disqualified under this section if after making reasonable efforts to preserve his or her job rights, he or she left his or her last work because of illness, injury, pregnancy, or disability. Ark. Code Ann. § 11-10-513(b)(2)(a).

Here, the Board specifically found that English was continuing to experience health problems related to the physical requirements of the job when the employer was short-staffed. Nevertheless, it denied him benefits, stating that it was not persuaded that a request for leave accompanied by an appropriate doctor's note would have been futile. This conclusion is not supported by substantial evidence.

English testified to the multiple instances in which he addressed his health condition and work environment with his employer, to no avail. He unsuccessfully attempted a transfer to a position where physical labor would not be required. He attempted to transfer to other departments or shifts where physical labor was not as prevalent, but those requests

4

were also denied. He repeatedly asked for additional help when his shift was short–staffed. Again, his requests were denied. When he requested time off for his medical condition, his request was denied. He reached out to human resources, but no action was taken.

The Board's determination that further action would have the potential of being successful is simply not supported by the record. Because the Board's determination is not supported by substantial evidence, we reverse and remand for an award of benefits.

Reversed and remanded.

VIRDEN and GLADWIN, JJ., agree.

*Colbert English*, pro se appellant.

*Cynthia Uhrynowycz*, Associate General Counsel, for appellee, Director, Division of Workforce Services.