SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. E-13-1249

| | |
|---|---|
| TERESA BUCK<br>                    APPELLANT<br><br>V.<br><br>DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES, AND LAKE<br>HAMILTON HEALTH AND<br>REHABILITATION<br>                    APPELLEES | **Opinion Delivered** December 3, 2014<br><br>APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2013-BR-03315]<br><br><br>AFFIRMED |

## DAVID M. GLOVER, Judge

Appellant Teresa Buck appeals the Board of Review's decision denying her unemployment benefits on the basis that she voluntarily left her last work without good cause connected to the work. On appeal, Buck argues that she voluntarily left her employment for good cause. We affirm the Board's denial of benefits.

Buck was employed by Lake Hamilton Health and Rehabilitation (LHHR), a long-term-care and rehabilitation facility, from May 14, 2013, to June 13, 2013, as a registered nurse. Buck's testimony was that on June 13, 2013, she arrived for her shift at 2:30 p.m., prepared to receive her report from the day nurse from 2:30 until 3 p.m.; instead, she was asked to assist with the discharge of a patient, and could not perform the medicine-cart count with the day nurse until 3:15 p.m., after which she began distributing medication, which was to be completed between 3 and 5 p.m. However, the assistant director of nursing told her to stop and take a report on a new admission LHHR was receiving later that evening; after

Buck performed this task she began distributing medication again only to be called away a second time due to an agitated patient requiring her attention. Buck requested and received assistance from the assistant director of nursing with the agitated patient; while she was calling the patient's physician for new medication around 4:15 p.m., the assistant director of nursing told her that one of Buck's patient's had requested a narcotic over an hour before and was in pain. Buck retrieved the agitated patient's new medication from a locked room and administered the new medication; she then gave the narcotic medication requested by the other patient and, as she came out of that patient's room at approximately 5 p.m., the administrator directed her to go to the dining hall for dinner. Buck said that she asked the administrator whether she wanted Buck to distribute medication or give meals and was told to report to the dining hall.

Buck testified that she did not tell the director of nursing that the assistant director of nursing had pulled her away from distributing medication to assess the agitated patient, but that the director of nursing knew there was an intervening event and did not give her any advice as to how to handle it and distribute medication at the same time. Buck said that she had been ordered to distribute medications; the administrator's order to report to the dining hall countermanded that order; and, in her opinion, the administrator's order placed her nursing license in jeopardy because she had not completed distributing medications prior to dinner. She stated that she believed it was an unsafe situation, so she quit.

On cross-examination, Buck agreed that the assistant director of nursing assisted her when she asked for help, but she asserted that she was assigned additional tasks that took her

away from distributing medication and prevented her from finishing by 5 p.m. Buck testified that she was to follow orders from the director of nursing, the assistant director of nursing, and the administrator, and, in her experience as a nurse for over thirty years, if there was a conflict or discrepancy that she was concerned about, she was to clarify it with the doctor or supervisor. Buck admitted that she did not tell any of the people giving her orders that she felt there were too many people giving her orders, but that she was trying to follow everyone's orders, and they were disrupting her.

Ruthanne Murphy, a lawyer and a registered nurse who testified on Buck's behalf, said that Buck believed her nursing license was in jeopardy due to the conflicting orders she had been given. Murphy stated that she had concerns about LHHR procedures because a nurse is placed "in the middle" when she is given diametrically opposite orders from supervisors, and it certainly created a problem when an administrator countermanded orders of the director of nursing. Murphy acknowledged that, as a registered nurse, intervening events occur that interrupt routine things such as distributing medications.

LHHR witnesses Amanda Levato, the administrator, and Christi Norman, the director of nursing, both testified that Buck never alerted them that she needed assistance performing her duties on the day she quit or that she thought her nursing license was in jeopardy due to conflicting orders. Levato said that Buck did not give a reason for leaving, she just told Levato that she was done. Norman said that while it was not normal for the director of nursing or the assistant director of nursing to assist the staff, Buck was new and they wanted to ensure she got all the help she needed so that she would not be overloaded; however, on

SLIP OPINION

the day in question, Buck never told anyone that she was behind and needed help, that she was getting too many orders from too many people, or that she believed her nursing license was in jeopardy.

Melissa Atkinson, a day-shift registered nurse at LHHR, testified that she had the same duties as Buck; that they were not in control of intervening events, including when admissions arrived from the hospital; that Buck did not ask her for help any time that day; and that when she needed help on her shift, she had always received it. She further stated that she had not found the orders she received at LHHR to be conflicting, and that everyone helped everyone else and there was a lot of teamwork.

The Appeal Tribunal found that Buck voluntarily left her last work without good cause connected with the work, and the Board of Review affirmed that decision. Buck now appeals to this court.

This court affirms the Board of Review when its decision is supported by substantial evidence, which is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Allen v. Dir.*, 2014 Ark. App. 233, 434 S.W.3d 384. The evidence and all reasonable inferences are viewed in the light most favorable to the Board's findings. *Id.* Even if the evidence could support a contrary decision, our review is limited to whether the Board could have reasonably reached its decision based on the evidence presented. *Id.*

Arkansas Code Annotated section 11–10–513 (Repl. 2012) provides that an individual shall be disqualified for unemployment benefits if she "voluntarily and without good cause connected with the work left his or her last work." "Good cause" is defined as "a cause that

SLIP OPINION

would reasonably impel the average able-bodied, qualified worker to give up his or her employment." *Wilson v. Dir.*, 2013 Ark. App. 276. An employee is required to make reasonable efforts to preserve her job rights in order to receive unemployment benefits. *Id.*

Here, the Board made the following findings:

The claimant contended that she quit her employment due to receiving conflicting orders from the director of nursing and administrator and due to her concern that her nursing license was in jeopardy. Levato and Norman testified that the claimant was required to complete distribution of medication by 5:00 p.m. on a regular basis, and that other events that occurred during her shift were normal and part of her job duties. Additionally, both Levato and Norman testified that the claimant did not express that she was not able to complete the distribution of medication or ask for assistance, and did not express her concerns that her nursing license was in jeopardy. The claimant testified that Levato and Norman were aware of the situation with the medication even though she did not specifically speak to them about it. However, the claimant admitted that she did not speak to Levato and Norman about the conflicting orders or her concerns about her nursing license being in jeopardy prior to quitting. The preponderance of the evidence indicates that the claimant became frustrated with her regular job duties and quit. The Board does not find that the claimant quit her employment due to a cause which would reasonably impel the average, able-bodied, qualified worker to give up employment. Further, the claimant did not speak to Levato or Norman about her concerns prior to quitting, and as such did not take appropriate steps to address her concerns prior to quitting her employment. Therefore, the decision of the Appeal Tribunal in Appeal No. 2013-AT-12764 is affirmed on the finding that the claimant voluntarily left last work without good cause connected with the work.

Buck argues on appeal that the order given to her by Levato to go to the dining room rather than distribute medication would have caused her to violate the Arkansas Nurse Practice Act, and she therefore had no choice but to leave her employment. Buck contends that this constituted good cause to leave her employment and she should not be denied unemployment benefits. She asserts that the Board's reasoning is flawed because it misses the point—she was asked to commit an unprofessional act by her supervisor, and that is the

relevant point. She contends that what she did or did not tell her supervisor about her thought process is irrelevant. Buck cites *Swain v. Director*, 102 Ark. App. 171, 283 S.W.3d 603 (2008), for the proposition that an employee is not required to exhaust every possibility to rectify mistreatment or abuse before leaving employment. However, there is no evidence of mistreatment or abuse in this case. While Buck had been interrupted on several occasions during her distribution of medications to handle other events and was behind at 5 p.m., when she was told to go to the dining room, Buck never explained the situation to the administrator, and she never asked for help in either distributing medication or supervising the dinner meal. Buck was required to make reasonable efforts to preserve her job rights before simply walking off the job, which the Board found that she did not do. There is substantial evidence to support this conclusion.

Affirmed.

PITTMAN and WHITEAKER, JJ., agree.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*; and *The Cruz Law Firm*, by: *Kathy A. Cruz*, for appellant.

*Phyllis A. Edwards*, for appellees.