# ARKANSAS COURT OF APPEALS

DIVISION III
No. E-15-773

|  |  |  |
|---|---|---|
| SHAWN ADAMS | | **Opinion Delivered:** April 6, 2016 |
| | APPELLANT | APPEAL FROM THE ARKANSAS BOARD OF REVIEW |
| V. | | [NO. 2015-BR-02306] |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, and QCA HEALTH PLAN, INC. | | REVERSED AND REMANDED |
| | APPELLEES | |

## WAYMOND M. BROWN, Judge

Shawn Adams (hereinafter, "appellant") appeals the decision of the Arkansas Board of Review (Board) in which she was disqualified from receiving unemployment benefits pursuant to Arkansas Code Annotated section 11-10-513(b), finding that she voluntarily left last work without good cause connected with the work due to illness but without making reasonable efforts to preserve her job rights. We hold that substantial evidence does not support the Board's decision and reverse for an award of benefits.

On appeal from the Board of Review, we do not conduct a de novo review; instead, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings of fact.[1] We will affirm the Board's findings if they are supported by substantial evidence, which is such relevant evidence as a reasonable

---

[1] *West v. Dir.*, 94 Ark. App. 381, 231 S.W.3d 96 (2006).

mind might accept as adequate to support a conclusion.[2] Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether it could have reasonably reached its decision based upon the evidence before it.[3] We are not here to merely ratify the decision of the Board, but to ensure that the standard of review has been met.[4]

In the instant case, appellant was employed as a Utilization Review Nurse for the employer for approximately two years. In a letter attached to her appeal to our court, she stated that the employment was detrimental to her health "because of an over abundant amount of mismanagement, hostility, devaluing, social exclusion, innuendos, sarcasm, intimidation and the administration of unsustainable workloads." She applied for unemployment benefits on September 8, 2015, after leaving her job with the employer. The Department of Workforce Services disqualified her from receiving unemployment benefits upon a finding that she voluntarily left last work without good cause connected with the work due to illness but without making reasonable efforts to preserve her job rights.[5]

Our statute providing for disqualification of benefits for voluntarily leaving work

---

[2] *Id.*

[3] *Id.*

[4] *Boothe v. Dir.*, 59 Ark. App. 169, 954 S.W.2d 946 (1997).

[5] The Department also found that she was disqualified pursuant to Arkansas Code Annotated section 11-10-507(3)(A) because she was not able and available to perform suitable work. However, the Appeal Tribunal found that she was "able and available" and, therefore, such determination is not pertinent for purposes of this appeal.

and the law cited by the Board in reaching its decision provides, in pertinent part, as follows:

> (a)(1) If so found by the Director of the Department of Workforce Services, an individual shall be disqualified for benefits if he or she, voluntarily and without good cause connected with the work, left his or her last work.
>
> (b) No individual shall be disqualified under this section if after making reasonable efforts to preserve his or her job rights, he or she left his or her last work:
>
> (1) Due to personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification.[6]

Good cause, for the purpose of unemployment benefits, is defined as a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment.[7]

Appellant appealed the Department's determination to the Appeal Tribunal, which conducted a hearing on October 22, 2015, at which she appeared to testify, but the employer did not. The Appeal Tribunal, in its findings of fact, stated that appellant felt "that the company was unorganized and that there was tension between herself and her supervisor. [She] did not address such feelings regarding the behavior." The Board affirmed the Appeal Tribunal's denial of benefits, but specifically noted, in making its decision, that appellant answered "No" when asked whether she requested a change of duties or hours and when asked if she requested a leave of absence before quitting. It,

---

[6] Ark. Code Ann. § 11–10–513.

[7] *Buck v. Dir.*, 2014 Ark. App. 685, 449 S.W.3d 705.

therefore, found that she did not make an effort to preserve her job rights.

There exists an exception, however, in which an employee is not required to take measures to resolve problems with her employer before leaving the employment if such measures would be futile.[8] Here, contrary to the findings of the Appeal Tribunal, appellant testified to the following instances where she attempted to rectify her unfavorable employment situation:[9]

APPELLANT:    I have . . . the letter here that I presented to them in regard to my complaints. . . I think the first one was on the 6/18/14, where I had complained to Yvette Coleman that I've felt like [my son's] confidentiality had been broken because my supervisor at the time, Kelly Noble, had gone into his file five or six times and I had requested that by no means did I want her in my son's personal information. . . So I was sent up to the attorney's office. . . And I was told I was being disruptive by complaining about my son's possible breach.[10]

. . . .

After that I did what they asked me. I didn't bring up any further discussion with management or staff about. . . concerns or complaints about my son anymore because I could see that it was futile. . .  the first letter to the Office of Civil Rights, it was on 6/23/14, and I even stated in this letter that. . . upon my complaint I was sent to the company's attorney and was. . . told that I better not complain because I was perceived as being disruptive.

. . . .

--------

[8] *Id*.

[9] (Certain parts of appellant's testimony found to be redundant or confusing are excluded for clarity).

[10] Appellant's son, who was covered under her employer's insurance, was at a rehabilitation facility, and she did not want that known by her co-workers.

Kathy Fleming. . . was mad because I transferred a phone call to her without telling her before I transferred it. . . we ended up in the supervisor['s] office, and. . . I pointed out that I wasn't the only person who had complained about her rudeness. And she told me. . . "Well, you can't believe what they are saying about you in the office." I'd already felt there was animosity. . . While we were in that meeting, [the supervisor] told us that if there was one word said after we left out of that meeting that we would be written up. And we walked out of that meeting and Kathy Fleming proceeded to call me a bitch, and I went back to [the supervisor's] office to tell her what she had said. And I realized that nothing was going to be done about it.

. . . .

So that's when I went ahead and wrote an addendum to my first complaint on 6/19/14.

. . . .

I kept asking and asking if they were going to be hiring any more utilization review nurses because there were only four of us at the time, and they kept telling me, "No. We are not." And I was telling them the workload was not going to be sustainable, and I said this in two different meetings with all the employees in the meeting. . . after about the third time I had mentioned it I was told. . . that I didn't need to bring up that subject. And I said, "Well, I just had some concerns about it." It was then that I was called into the office by [the supervisor] and with Cindy Ferguson, and that was on 2/12/15. I had made several attempts to talk to them about my concerns. . . when I went into that meeting [Ferguson's] attitude towards me was just hostile.

H. OFFICER: What was the final incident that made you decide to quit? Let's go there.

APPELLANT: It was. . . the unsustainable workload. . . I said, "I'm not going to be able to do all this. There's just − there's no way. There's just no way."

H. OFFICER: And what did they tell you?

APPELLANT: There was never any response. There was just never any response. It − it was like it didn't matter. It − it never mattered what I had to say.

Reasonable efforts to preserve job rights include taking appropriate measures to prevent an unsatisfactory situation on the job from continuing.[11] Appellant took such measures only to realize, over time, they were futile.

Because appellant repeatedly brought her complaints to the attention of her superiors to no avail, and because the employer was unavailable to respond to such claims, we hold that it was futile for her to either request a leave of absence or an adjustment of her workload/hours. Therefore, substantial evidence does not support that she voluntarily left last work without good cause connected with the work.

Accordingly, we reverse and remand for an award of benefits.

Reversed and remanded.

VIRDEN and HIXSON, JJ., agree.

*Shawn Adams*, pro se appellant.

No response.

---

[11] *Gunter v. Dir.*, 82 Ark. App. 346, 107 S.W.3d 902 (2003).

SLIP OPINION